Points decided.

[Filed April 14, 1888.]

# WILLIAM N. NORTHROP ET AL., APPELLANTS, *v.* P. A. MARQUAM, RESPONDENT.

INTESTACY — CHILD NOT NAMED OR PROVIDED FOR. — Under section 3075 of Hill's Code a testator is deemed to have died intestate, as to any child or children, or the descendants of any such child or children, in case of their death not named or provided for, although born after the making of such will or the death of the testator.

WILL — CHILD NOT NAMED OR PROVIDED FOR. — The will may be valid and effectual as to all the children named or provided for therein, but as to those not named or provided for, it is no will, and such child or children will take under the law of descents in all respects as if no will had been made.

POSTHUMOUS CHILD — DESCENT. — A child *in ventre sa mere*, not named or provided for in its father's will, takes by inheritance its proportionate interest in its father's estate.

WILL — SALE OF PROPERTY BY EXECUTION. — Under section 1155, when a testator makes provisions in his will for the sale of land of which he died seised, the executors may sell the same by virtue of the power conferred by the will; but such sale must be reported to the County Court, and confirmed as in other cases of sales of real property by executors and administrators.

WILL — SALE BY EXECUTORS. — In case of a child or children not named or provided for, a sale by the executors under the will transfers to the purchaser all that the executors could lawfully sell; but the interest of such child or children not named or provided for being excepted out of the will by the statute, remains unaffected by such sales.

WILL — EQUITABLE CONVERSION. — A will which directs the sale of the real estate of the testator by the executors, does not work an equitable conversion of the interest of a child or children not named or provided for by the will.

STATUTE OF LIMITATIONS — INFANCY. — Section 17 of the Code, as amended in 1878 (Hill's Code, § 17), repealed the exception of infancy in that section, thus placing all of the disabilities mentioned therein on the same footing.

INFANT — TIME WITHIN WHICH HE MAY SUE TO RECOVER REAL PROPERTY. — An infant has fifteen years after a cause of action accrues to him in which to sue to recover his lands, unless he should become of age after the ten years have elapsed and before the expiration of five years thereafter, in which case the time for the commencement of the action would be one year after the disability ceased.

TENANTS IN COMMON — ENTRY BY ONE. — The general rule is that an entry by one tenant in common is not hostile to the rights of his co-tenants, but is for their benefit as well as his own.

TENANTS IN COMMON — OUSTER. — One tenant in common may oust his co-tenant, and make his possession adverse.

TENANTS IN COMMON — OUSTER — NOTICE — STATUTE OF LIMITATIONS. — To make the possession of a tenant *adverse*, the co-tenant out of possession must have notice of such exclusive and hostile claim, and the Statute of Limitations only begins to run from the time of such notice.

CASE IN JUDGMENT. — H. was born in the month of February, 1871; M., owning three fourths of the land, and she one fourth, entered into the possession of the same on the 3d of April, 1871. *Held*, that she was entitled to notice of the hostile character of his claim. This notice could not be given or imparted to her until she was capable in law of receiving it. H.'s as well as the plaintiff's infancy made it impossible to charge or affect them with notice of the nature,

character, or extent of the defendant's claim, or of the nature of the title under which he entered, and therefore they were not ousted, and the defendant's possession never became adverse.

STATUTE OF LIMITATIONS—WHEN ONCE COMMENCED TO RUN, NOT STOPPED OR ARRESTED.—The rule is of almost universal application, that when the Statute of Limitations is set in motion, or commences to run, it will not cease to be arrested by any subsequent event not within the saving clause of the statute.

APPEAL from Multnomah County.

*Moreland & Masters,* for Appellants.

*Mitchell, McDougall, Tanner & Bower,* for Respondent.

STRAHAN, J.—This is an action of ejectment to recover an undivided one fourth of certain real property situated in Multnomah County.

This cause was tried before the court without a jury, and the following facts and conclusions of law were found by the court:—

1. That Henry C. Northrop, being an inhabitant of Multnomah County, Oregon, died in said county on the twenty-seventh day of June, 1870, seised and possessed at the time of his death of the undivided half of the whole tract of land described in the complaint herein, and J. C. Van Renssalaer was seised and possessed of the other undivided half.

2. That said Henry C. Northrop left surviving him his lawful wife, Mattie V. I. Northrop, and the following named living children, to wit, William N. Northrop, Sarah Ella Northrop, now called in the complaint Ella Middleton, and Courtland J. Northrop, and there was born of his said wife, Mattie V. I., after his death, a lawful child of said Henry C. Northrop, on the eighteenth day of February, 1871, which child was named Hettie Northrop, and died on April 15, 1873.

3. That the sole heirs at law of said Hettie Northrop, deceased, were her mother, said Mattie V. I., and her brothers and sisters named in finding number 2 above; and said Mattie V. I. died intestate on the fourteenth day of January, 1874, leaving surviving her the three children above named, to wit, William and Courtland J. Northrop, and Ella Middleton (then Ella Northrop), who are the sole heirs at law of Mattie V. I. as well as of said Hettie.

4. That on the eleventh day of June, 1870, said Henry C. Northrop made his last will and testament, of which a copy (omitting formal parts) reads as follows:—

"1. I hereby constitute and appoint my beloved wife, Martha V. I. Northrop, to be executrix, and my beloved brother-in-law, Leander Quivey, to be my sole executor of this my last will and testament, directing them to pay all of my just debts and funeral expenses out of my estate. (2) I hereby give, devise, and bequeath unto my said beloved wife, Martha V. I. Northrop, lot number one (1), in block number two hundred and three (203), in the city of Portland, aforesaid, the same being the homestead which we now occupy, and also all my household goods, furniture, clothing, silverware, pictures, and jewelry, to be received and held by her as her own property in her own right forever. (3) It is my will, and I do hereby direct, authorize, and empower my said beloved executrix and executor to sell at private or public sale, at such time or times, and at such prices as they shall deem expedient, all the rest and residue of my real estate, or such part thereof as they deem advisable, and the avails thereof to place at interest or re-invest, and the rents, issues, and profits thereof apply to the support of my said beloved wife, and the support and education of my said beloved children, hereinafter named, until they become twenty-one years of age. (4) All my property except such portion thereof as is hereinbefore given, devised, or bequeathed to my said beloved wife, or the avails thereof in case of sale as aforesaid, and all the rents, issues, and profits thereof, except such as may be consumed in the support of my said beloved wife, and in the support and education of my beloved children, hereinafter named, I hereby give, devise, and bequeath unto my said beloved wife, and to my beloved children, Sarah Ella Northrop, William N. Northrop, and Courtland J. Northrop, share and share alike; the shares of my beloved children to be paid over to them by my said executrix and executor as such children shall become twenty-one years of age." Which said will was duly admitted to probate in the County Court of Multnomah County, on the ———— day of July, 1870, and Mattie V. I. Northrop and

Leander Quivey, named therein, duly qualified and acted as executors of said will.

5. That the plaintiffs, William N. Northrop, Ella Middleton, and Courtland J. Northrop, are the identical persons named in and described in said last will as the children of said Henry C. Northrop.

6. That on the 18th of July, 1870, the executors of said last will filed in the said County Court a petition for an order to sell the property of said Henry C. Northrop, deceased, of which a copy reads as follows: —

"The undersigned executrix and executor of the last will and testament of Henry C. Northrop, deceased, respectfully represents unto this honorable court that said deceased by his last will and testament intended to and did provide for the support of his widow, and the support and education of his children, from the revenue of the avails of his real estate not devised as by reference to his last will and testament admitted to probate on file in this court, will fully and at large appear that there is no personal property of the estate of said deceased exempt from execution not bequeathed by said last will and testament, to be set apart for the support of the widow and children of said deceased, and that all of the property of said estate not bequeathed is insufficient to pay the debts and testamentary expenses of said estate, although the estate of said deceased is sufficient, as we believe, after the payment of all debts and liabilities, to afford a reasonable support to such widow and children. Wherefore and because the widow and children of said deceased are and will be without the means of support except from the sale of such real estate, the undersigned pray that the personal property of the estate of said deceased be sold by said executrix and executor, at public or private sale in their discretion, and the proceeds thereof be applied toward the settlement of said estate, and also that the following described real estate be sold by such executrix and executor agreeable to the statute in such case made and provided, and the proceeds be re-invested or placed at interest, and the rents, issues, and profits, and increase be applied to the support of the widow and the support and education of the children of said deceased.

"Said real estate of said deceased not devised and herein *placed* to be sold is described as follows, to wit: The undivided half of lot number 5, in block number 112, in the City of Portland, in the county of Multnomah, in the State of Oregon; also the undivided half of 320 acres more or less of land, situate in Marion County, in the State of Oregon,. in township 6 south, of range 2 west, deeded by Anson Mohart and wife to Henry C. Northrop and J. C. Van Renssalaer, and covered by notification No. 396, and also the undivided half of all that part of the donation land claim of Thomas Stephens in the county of Multnomah, in said State, beginning at the southeast corner of said land claim, and running thence west 80 chains, thence north at right angles with said last mentioned line 36 chains and 25 links, thence east parallel with said first mentioned line 76 chains and 25 links to the south bank of the Willamette River, and thence south, following the meanderings of said river to the place of beginning, containing 271½ acres, less the amount thereof heretofore sold by deceased and J. C. Van Renssalaer, amounting to about 10 acres more or less, and also the west half of the northeast quarter, and the east half of the northwest quarter of section 28, in township 1 south, of range 1 east, in the Willamette land district in said State, containing 160 acres of land.

"The undersigned, Mattie V. I. Northrop, aged twenty-eight years, is one of the legators and heirs of said deceased, and Sarah E., aged eight years, William N., aged six years, and Courtland J. Northrop, aged two years, are the children and sole remaining heirs and legators of said deceased, and all reside in the city of Portland, in said county of Multnomah. All of which is respectfully submitted.

"MARTHA V. I. NORTHROP, Executrix.
"LEANDER QUIVEY, Executor.

"STATE OF OREGON, }
MULTNOMAH COUNTY. } ss.

"I, Leander Quivey, one of the petitioners in the foregoing petition, being duly sworn, say that I verily believe that the

XVI. OR.—12.

foregoing petition by me subscribed, and the matters and things therein contained, are true.

"Subscribed and sworn to this eighteenth day of July, A. D. 1870.

"C. W. PARRISH, Clerk.
"By JAMES W. DAVIS, Deputy."

On which petition said County Court, on the first day of August, 1870, made an order in words and figures following, to wit:—

'In the matter of the estate of Henry C. Northrop, deceased. Now, on this day, based upon the application of the executrix and executor of the last will and testament of Henry C. Northrop, deceased, heretofore filed in this court, it appearing to the court that Martha V. I. Northrop, widow, Sarah E., William N., and Courtland J. Northrop, children of said deceased, have been duly served with citation more than ten days before the first day of this term of this court, and William P. Doland, heretofore appointed guardian *ad litem* for each of said children, having appeared and being satisfied that the sale prayed for in said application is authorized by the last will and testament of said deceased, and that no reason exists why the prayer of said petitioner should not be granted, and the court having duly considered said premises, and being satisfied that said petition and the matters and things therein contained are true, and that the prayer of said petition ought to be granted, it is, therefore, hereby ordered by the court that Martha V. I. Northrop, executrix, and Leander Quivey, executor of the last will and testament of Henry C. Northrop, deceased, be, and they are hereby authorized to sell as upon execution all the right, title, and estate of the said deceased in and to the following described real estate, that is to say, the undivided half of all that part of the donation land claim of Thomas Stephens, in the county of Multnomah, in the State of Oregon, beginning at the southeast corner of said land claim, and running thence west 80 chains, thence north at right angles with said last mentioned line 36 chains and 25 links, thence east parallel with said last mentioned line 26 chains and 25 links to the south bank of the Willamette River,

and thence south following the meanderings of said river to the place of beginning, less the amount sold thereof by deceased and J. C. Van Renssalaer; and it is further ordered by the court that the proceedings of the sale of said real estate be placed at interest or re-invested, and the rents, issues, and profits, and increase thereof, be applied to the support of the widow, and the support and education of the minor children of said deceased, until such children become twenty-one years of age, or until the further order of the court."

7. That after the order of said County Court, made as aforesaid, the said executors gave notice of sale of the land described in the said order as upon execution, and pursuant to said notice did, on the seventh day of January, 1871, sell the undivided half (being the interest of the deceased), in and of the west half of the whole tract described in said proceedings, and said sale was at public auction, and the defendant said P. A. Marquam was the highest bidder and the purchaser of said sale for the price of $1,706.25, which sum was duly paid by said Marquam to said executors, agreeable to the terms and conditions of said sale. The said executors made due report of their proceedings and of all matters concerning said sale to said County Court, and said court made an order dated February, 1871, confirming said sale, which order is in words and figures following, to wit:—

"In the matter of the estate of Henry C. Northrop, deceased. Now, on this day, Martha V. I. Northrop, executrix, and Leander Quivey, executor of the last will and testament of Henry C. Northrop, deceased, having made report and return of their proceedings in the sale of a portion of the real estate of said deceased agreeable to the order of this court authorizing such sale, bearing date August 1, A. D. 1870, which said report and return is filed in this court, and the court having duly examined and considered said proceeding and being satisfied that said sale was regular in all things, and the sum bidden for the same (bidden for the property) proportionate to the value thereof, and that said property would not bring a higher price upon resale, and that said sale was legally made, fairly conducted,

and fully authorized by the last will and testament of said deceased, and no objection having been made or filed to a confirmation of said sale, therefore it is hereby ordered and adjudged that said sale be, and the same is hereby confirmed, and that said executrix and executor execute a conveyance for the premises sold to the purchaser agreeable to the terms of the sale," which said order was entered of record, A. D. 1871, and said executors thereupon executed and delivered to said P. A. Marquam a deed dated February 1, 1871, reciting in full said orders, and in form conveying in fee the undivided half of the west half of the whole tract described in the complaint.

8. That on the fourteenth day of March, 1871, the fact of the birth of the posthumous child Hettie above mentioned was made known to said County Court, and it undertook without citation of said heirs to appoint W. P. Doland guardian *ad litem* for it, by an order of that date, and a petition of said executors of date November 11, 1870, for an order to sell the real property of said estate at private sale, being on file, said executors, on the fourteenth day of March, 1871, filed a further petition for a modification of the order to sell as upon execution made as aforesaid on the first day of August, 1870, so as to allow the residue of the land in said order mentioned to be sold at private sale, whereupon the said court made the following order, to wit:

"In the matter of the estate of Henry C. Northrop, deceased. Application of the executrix and executor for a modification of the order for the sale of lands heretofore made. Said executrix and executor appearing by A. E. Wait, Esq., their attorney, and the minor heirs of said deceased appearing by W. P. Doland, their guardian *ad litem*, and making no objections thereto, and the court having examined the petition of said executrix and executor and heard the statement of the parties, and being satisfied that said application ought to be granted, and that a sale of said land at private sale is fully authorized by the will of deceased, it is hereby ordered that the order of this court heretofore made on the first day of August, 1870, for the sale of land by said executrix and said executor, be so modified as to allow them to sell said lands at a private or public sale, at such

times and at such prices as they deem expedient, and for the best interest of said estate, and said order is hereby modified accordingly, and said sales may be made for either cash down or on a credit, as said executrix and executor deem best, and if on credit to be secured by mortgage."

9. That said executors thereupon in form sold at private sale to said P. A. Marquam the right, title, and interest which said Henry C. Northrop had at the time of his death in the east half of said tract of land for the price and sum of $6,450, which said Marquam duly paid according to the terms of said order, and said executors made return in writing under oath to said County Court of their proceedings concerning said sale, and said County Court, by an order made the seventeenth day of March, 1871, confirmed said sale, and directed conveyance to said purchaser in manner as follows, to wit:—

"Now on this day comes on to be heard the report of sale of land by the executrix and executor of said estate heretofore filed, and the minor heirs of deceased being present by W. P. Doland, their guardian *ad litem,* and being satisfied thereunto, and no objections being filed or used against said sale, and the court having fully examined the proceedings concerning said sale, finds from said report and the proofs submitted to the court that said executrix and executor, on the fifteenth day of March, 1871, by virtue of special provisions contained in the last will and testament of deceased, and in accordance with special directions contained therein, in reference to the sale of lands belonging to said estate, and in pursuance of the order of this court heretofore made and sold to P. A. Marquam, the remaining interest of said deceased in and to that portion of the land claim of Thomas Stephens, heretofore owned by said deceased and J. C. Van Renssalaer, and particularly described in the inventory heretofore filed in this court of said executrix and executor, that is to say, the undivided half interest in and to the east half of said tract of land, containing, after some thirteen acres heretofore sold by said deceased and J. C. Van Renssalaer, about one hundred and thirty acres of land; that the same was sold at the rate of one hundred dollars per acre, or fifty dollars.

per acre for the interest of deceased, it being an undivided half interest in said land, five hundred dollars to be paid down in gold coin on delivery of deed, balance in like .gold coin in five years, with interest at ten per cent per annum, to be secured by mortgage.   That said Marquam was the highest bidder, and the said price was the highest price bid for said land, and said price was not disproportionate to the value of said land, and a greater price cannot be obtained for said land at a resale; that said sale was fairly made and legally conducted, and was expedient, and was for the best interest of said estate and the heirs thereof.   It is therefore ordered, directed, and decreed that said sale be in all respects approved and confirmed, and that said executrix and executor make and execute to the purchaser a good and sufficient deed to said premises, and take notes secured by mortgage for the balance of the purchase price."

10.  That said executors, on the third day of April, 1871, in pursuance of said order, the alleged power in said will set forth, made a deed purporting to be in fee of the undivided half of the east half of said tract first by order of August, 1870, directed to be sold.

11.  That both said deeds, that of February 7, 1871, and that of April 3, 1871, contained descriptions of the land purporting to be conveyed by metes and bounds and courses and distances, and the descriptions in the two deeds taken together covered and included all the tract of land described in the complaint herein; and said P. A. Marquam at the date of the deed last above mentioned had acquired all the interest of J. C. Van Renssalaer in said tract of land, and claimed to own the whole in fee and in severalty.

12.  That the defendant immediately after the execution and delivery to him of said deeds by said executors, to wit, April 3, 1871, entered into actual possession of the whole tract of land covered by the description in said deeds, being the same tract mentioned in the complaint herein, claiming to own the same, and every part and portion of the same, in fee and in severalty, and has continuously since said date until the commencement of this action been in possession thereof, and has continuously

claimed to be the sole and exclusive owner of, and has exercised acts of ownership over the same in manner following. He went personally on and over the tract every two months during said period, and much of said period he was on and over said land as often as once a week, and during all said period has actually occupied, by tenants paying him rent, some portion of said tract. He had surveys made and private roads located. He fenced small parcels within the tract cultivated by his tenants' several small parcels, built or caused to be built upon the tract in different places, in all ten houses, in some or all of which tenants have lived paying him rent. He leased a portion of the tract for a saw-mill which a tenant built and operated on the tract. He had the brush and timber on several acres cut down and slashed. He sold considerable quantities of timber on said tract for cord-wood and saw logs. He has paid the taxes levied on the land, and his claim to own the same has been notorious, open, and public, and he has been during all said period reported to be the owner of said land, and has claimed the same adversely to the said Hettie Northrop and the plaintiffs herein.

13. That the defendant Marquam had no knowledge of the birth or existence of said Hettie Northrop prior to March 14, 1871.

14. That after the appointment and qualification of said executors, and before said sale, appraisers of the estate of said H. C. Northrop, deceased, had been appointed by said County Court, and had appraised said tract of land in controversy in this action at $3,000, and the whole estate of said deceased at $10,309.50.

15. That the tract of land belonging to said estate and described as part of section 28, T. 1 S., of R. 1 E., containing one hundred and sixty acres, remained unsold and undisposed of at the date of the commencement of this action.

On motion of counsel for the plaintiffs the court made the further findings of facts upon points suggested as follows: —

Finding 17. That the granting and descriptive parts of the deed of date April 3, 1871, mentioned in finding 10, are in words and figures following, to wit:

"Now this indenture further witnesseth that the said party of the first part, by virtue of the last will and testament of said deceased, and in pursuance of the order of this court heretofore made, and the statutes in such cases made and provided, and in consideration of the sum of $6,450 United States gold coin, by the said party of the second part to the party of the first part in hand paid, the receipt whereof is hereby acknowledged, have granted, bargained, and sold, and by these presents do grant, bargain, sell, and convey unto the said party of the second part, and to his heirs and assigns in fee-simple forever, the undivided half interest in and to the aforesaid premises, and more particularly described as follows, to wit: Beginning at the southeast corner of Thomas Stephens' donation land claim at low-water mark on the Willamette River, thence down said river as follows, N. 23, W. 12.50 chains; N. 22, W. 7 chains; S. 62, W. 4.57 chains; N. 36.30, W. 3.33 chains; N. 70, E. 4.98 chains; N. 1, W. 2 chains; N. 21, E. 9.50 chains; N. 9, E. 5.21 chains; to the northeast corner of this tract, thence W. 9.44 chains to east line of macadamized road, 40.34 chains, to northwest corner of this tract, from which a maple 10 inches in diameter bears N. 73½, W. 56 links distant, a fir 10 inches in diameter bears N. 77, E. 31 links distant, thence south vari, 20, 15 E., 17 W. chains; to creek 36.25 chains; to southwest corner of this tract from which a maple 18 inches in diameter bears S. 71, W. 42 links distant, thence east vari, 20 E., 4,512 chains to low-water mark on the Willamette River, the place of beginning, containing 142.07 acres of land subject to the easement of the macadamized road, and excepting," etc.

18. As to the matters in finding 12, the court further finds that the macadamized road in 1871, and thenceforth to the present time, was and is located on the easterly portion of the tract in controversy, and runs across said tract parallel to the Willamette River; that a house and barn and a small enclosure were on a parcel of this tract between the road and the river at the time when defendant obtained the deeds from the executors in 1871, and he immediately went into occupation of this house and barn, built fences, and leased the house. Those

premises were occupied by his tenants until seven or eight years ago, when defendant sold the house and parcel on which it stood. The slashing was done by defendant on the land in controversy between 1871 and 1875. There has not at any time been a fence enclosing the whole tract. The land was, except where small parcels were cleared in order to erect buildings, a forest of heavy fir timber and brush. The greater part of the acts of possession and ownership on the part of the defendant, recited in this finding and in number 12, were done within the ten years next preceding the commencement of this action—the exact date of each act is not shown—the houses built and occupied by defendant mentioned in finding 12 are all but one on the east half of the tract and within the boundaries described in the deed of April 3, 1871.

On the tract mentioned in the deed of February 1, 1871, there has been one house only, and occupied by a tenant of defendant, around which is a fence enclosing two or three acres which have been cultivated and planted in fruit; this improvement has been made within the last ten years, as a small tract in the easterly portion has been leased by defendant and rent paid to him therefor within the five or six years for a brick yard. The aggregate of all enclosures made or actually used by defendant on the whole tract amount to less than fifteen acres and probably to about ten acres.

In 1878 defendant had two hundred cords of wood cut on premises in dispute. On motion of the defendant the court further amended its findings of fact herein by adding the stipulation herein filed September 21, 1887, thereto, and making it a part thereof.

As conclusions of law the court found: *First.* That neither the plaintiffs nor the said Hettie Northrop, nor either of them, nor their ancestors, nor predecessors, nor grantor, has been seised or possessed of the lands described in the complaint, or of any parcel or portion thereof, within the period of sixteen years and upwards prior to the commencement of this action. *Second.* That the defendant P. A. Marquam has been in possession, actual, open, and notorious, by himself and his tenants, of the

whole tract of land described in the complaint continuously, claiming the same adversely to the plaintiffs for more than sixteen years prior to the commencement of this action. *Third.* That plaintiffs are not, nor is either of them, owners nor entitled to the possession of said tract of land described in the complaint, nor any part or portion thereof. *Fourth.* That the defendant is the owner in fee and is entitled to the possession of the land described in the complaint, and is entitled to judgment for the same and for costs and disbursements.

A judgment in favor of the defendant was entered on these findings, from which the plaintiffs have appealed and assigned numerous errors.

The several important questions of law presented by these findings I will now proceed to examine.

1. The first question requiring notice is, what interest did Hettie Northrop have in the land in controversy? She was born after the making of her father's will; she was not named or provided for in the will, and her father died about eight months before her birth. The findings of fact bring the case fully within section 3075 of Hill's Code, which is as follows: "If any person shall make his last will and die, leaving a child or children, or the descendants of such child or children, in case of their death, not named or provided for in such will, *although born after the making of such will or the death of the testator,* every such testator so far as shall regard such child or children or their descendants not provided for shall be deemed to die intestate, and such child or children or their descendants shall be entitled to such proportion of the estate of the testator, real and personal, as if he had died intestate, and the same shall be assigned to them, and all the other heirs, devisees, and legatees shall refund their proportional part." As to Hettie's interest in her father's estate, he is deemed to have died intestate. While the will is valid and effectual as to all the children named or provided for therein, it is no will as to those not named or provided for, and any such child will take under the law of descent in all respects as if no will had been made. Hettie, therefore, though *in ventre sa mere* at the time of her

father's death, took by inheritance one fourth of all the real property of which he died seised in this State. And by her and her mother's death the plaintiffs have succeeded to her interest.

2. But counsel for respondent claim that conceding this to be true, the will conferred authority on the executors to sell the land; that Hettie's interest was divested by the sale by the executors, and that she is compelled to accept her proportion of the proceeds of the sale, and counsel claim that this principle applies to a child not named or provided for in the will. And to sustain this proposition they cite *Hatch* v. *Bassett*, 52 N. Y. 360; *Power* v. *Cassidy*, 79 N. Y. 613; 35 Am. Rep. 550; *Wilson* v. *Wilson*, 54 Mo. 213; *Cronise* v. *Hardt*, 47 Md. 433; *Allen* v. *De Witt*, 3 Com. B. 276; *Phelps* v. *Pond*, 23 N. Y. 69; *Stagg* v. *Jackson*, 1 Com. B. 206, and some other authorities not accessible to us. And they claim that this doctrine of equitable conversion applies to the interest of a child not named or provided for in the will; but none of the authorities cited sustain that doctrine as applied to a case of a child not named or provided for. By the terms of the statute there is no will as to such child, it is a case of intestacy, and to hold that the estate which comes to him by inheritance in such case could be in any manner affected by the will would be in effect to disregard the plain provisions of the statute. On the other hand, appellants claim that the sale made by the executors is a nullity, for the reason the law regulating the manner of conducting sales by executors and administrators to pay debts was not complied with. If the validity of this sale depended upon the proceedings had in the County Court of Multnomah County for that purpose it would probably be held invalid for all purposes. The essential requisites of the statute under which the executors were attempting to proceed seem to have been pretty effectually ignored. But as to this, it is not necessary to express any opinion, for the reason the will made provision for the sale of the property except Hettie's interest, and under section 1155 of Hill's Code, the executors could sell the same without conforming to the general requirements of title 6, chapter 15, of Hill's Code. The sale then was made under authority of the will, and not under authority

of the order of the court. It was regularly reported to the courts and confirmed, and a deed made to the purchaser, which transferred to such purchaser all that the executors could lawfully sell under the will. That included the interest in the land of the children named or provided for; but Hettie's interest being excepted out of the will by the express provisions of the statute, remained unaffected by such sale. The purchaser acquired under this sale three fourths of the land attempted to be sold, and thereby became a tenant in common with Hettie in the entire tract. These conclusions were not seriously contested upon the argument; but it seems necessary to state them in order to reach the real contention in this case.

3. Counsel for appellant contend that the Statute of Limitations does not bar the plaintiff's right of entry as long as she labors under the disability of infancy. At the time the defendant entered upon the lands in controversy, the Code contained the following section, saving the rights of persons who labored under certain disabilities:—

"Sec. 17. If any person entitled to bring an action mentioned in this title, except for a penalty or forfeiture, or against a sheriff or other officer for an escape, be at the time the action accrued, (1) within the age of twenty-one years; or (2) insane; or (3) imprisoned on a criminal charge, or in execution under the sentence of a court for a term less than his natural life; or (4) a married woman, the time of such disability shall not be a part of the time limited for the commencement of the action; but the period within which the action shall be brought, except the actions mentioned in section 4, shall not be extended more than five years by any such disability, *except infancy;* nor shall it be extended in any case longer than one year after the disability ceases."

In 1878 this section was amended so as to read as follows:—

"Sec. 17. If any person entitled to bring an action mentioned in this title, *or to recover real property,* or for a penalty, or for forfeiture, or against a sheriff or other officer for an escape, be at the time the cause of action accrued either, (1) within the age of twenty-one years; or (2) insane; or (3) imprisoned on a criminal

charge, or in execution under the sentence of a court for a term less than his natural life; or (4) married women, the time of such disability shall not be a part of the time limited for the commencement of the action; but the period within which the action shall be brought shall not be extended more than five years by any such disability, nor shall it be extended in any case longer than one year after such disability ceases."

This amendment was made in connection with another one at the same time, changing the limitation from twenty to ten years in actions to recover real property. Under the section as it stood before it was amended, persons laboring under the disabilities enumerated were entitled to have five years added to the limitation prescribed by statute, and in case of infancy such person was allowed one year after his disability ceased in which to commence his action. But by striking out the words "except infancy," as was done by the amendment, this disability was placed on the same footing as the others. The saving of the rights of infants is not different from that of the other persons mentioned in the section. They all stand on the same footing, and are governed by the same time. We hold, then, that under this section an infant has fifteen years after a cause of action accrues in which to prosecute his action to recover real property, unless he should become of age after ten years have elapsed, and before the expiration of five years thereafter, in which case the time for the commencement of the action would be one year after the disability ceased. It is contended that this construction is harsh; that its effect may be to deprive the defenseless and helpless of their property. It must be conceded that all of this is true; but it is an argument which must be addressed to the legislative branch of the government, and not to the courts. It is our province to apply the law to the facts of each particular case as it shall come before us, and beyond this we cannot go.

4. But the more important question remains to be considered, and that is, as against Hettie and the plaintiffs who have succeeded to her estate through her and her mother's death, when did the Statute of Limitations begin to run? As has been shown, the plaintiff by his purchase under the will acquired an

undivided three fourths of the land in controversy. He thereby became a tenant in common with Hettie in said land, and when she died her estate descended to her mother and brothers and sisters in equal parts, and upon the mother's death her interest descended to plaintiffs, who were then and have ever since remained minors, and the tenancy in common continued between the plaintiffs and the defendant. We are then to consider whether or not the facts found are sufficient to set the statute in motion at the time of the defendant's entry or afterwards, and thus bar the plaintiffs' right of entry. The general rule is that the entry by one tenant in common is not hostile to the rights of his co-tenants, but is for their benefit as well as his own.

Mr. Freeman, in his work on Cotenancy, section 166, thus states the principle: ". . . . Therefore as a general proposition, the entry of one co-tenant inures to the benefit of all. But this proposition is based on the supposition that the entry is made either *eo nomine* as co-tenants, or that it is silently made without any avowal in regard to it, or without notice to a co-tenant that it is adverse. As both have an equal right to the possession, the law presumes that if one only enters and takes the rents and profits he does this act as well for his companion as for himself. And the continuing possession of a co-tenant, whether the entry was made by himself alone or in connection with his companions, is the possession of all the co-tenants." (Freeman on Cotenancy, § 167.) But it is equally well settled that one tenant in common may oust his co-tenant and make his possession adverse. (Freeman on Cotenancy, §§ 221, 229, et seq.) In section 229, *supra,* the author continues: "Another element is necessary in order to make it sufficient to found an adverse holding upon, and that is notice of such exclusive and hostile claim to the joint owner out of possession. When one joint owner is in possession of the whole, the legal presumption is that he is keeping possession not only for himself but for his co-tenants, according to their several interests, and the other joint owners have the right to so understand until they have notice to the contrary; and the statute would only run from the time of such notice." So in *McClung* v. *Ross,* 5 Wheat. 116, it is said: "That one tenant in common

may oust his co-tenant and hold in severalty is not to be questioned. But a silent possession accompanied with no act which can amount to an ouster, or give notice to his co-tenant that his possession is adverse, ought not, we think, to be construed into an adverse possession. The principles laid down in *Barr* v. *Gratz*, 4 Wheat. 213, apply to this case."

The cases on this subject are collected in three leading cases (Am. Law Real Prop. 121), where the principle is thus stated: "We have several times alluded to the necessity of knowledge on the part of the alleged ousted tenant of the acts said to constitute the ouster before an ouster can be inferred; and it may be stated as the rule, that in all cases the co-tenant must have knowledge of the ouster or disseisin before an adverse possession can be alleged against him. The knowledge must be either brought home to him, or the occupier must make his possession so visibly hostile, notorious, and adverse, as to justify an inference of knowledge on the part of the tenant sought to be ousted or disseised, and of laches on his part, should he under such circumstances fail to assert his rights." So, also, in *Chandler* v. *Ricker*, 49 Vt. 128, it is said: "In order to sever his relation as co-tenant and render his possession adverse, it must be affirmatively shown that the orator had knowledge of his claim of exclusive ownership, accompanied by such acts of possession as were not only inconsistent with, but in exclusion of the continuing rights of the orator, and such as would amount to an ouster as between landlord and tenant." And in *Culver* v. *Rhodes*, 87 N. Y. 348, the court reviews many authorities, and states the principle of law applicable in such case thus: "We are thus led to consider the reason and justice of the rule which should measure the adverse possession necessary to effect the ouster of a co-tenant. Assuredly it should be one which requires notice in fact to the co-tenant of unequivocal acts, so open and public that notice may be presumed of the assault upon his title and the invasion of his rights. The adverse possession sets running a limitation which in the end may operate as a bar. It does so only upon the theory that the party disseised has slept upon his rights, and by silence and inaction has waived them. The rule is just if the

ouster or adverse possession is brought home to the knowledge of the owner, or is of such a definite and hostile public character that such knowledge may be fairly presumed; but it is unjust and unreasonable if enforced without such limitation." (*Trustees etc. Town of East Hampton* v. *Kirk*, 84 N. Y. 220.) "The authorities plainly recognize the reason and justice of such requirement, and with some differences and variations have never drifted away from it. . . . . To effect an ouster of the co-tenant there must be an actual, continued, visible, notorious, distinct, and hostile possession. It must be such that knowledge of its existence is brought home to the co-tenant."

Hettie was born about the month of February, 1871; the defendant entered into the possession of said premises on the 3d of April, 1871. To say that she was in any way prejudiced by his entry, or that she had or could receive any kind of notice that his claim was hostile, or in any way inimical to her rights, would be a mockery of justice. She was plainly entitled to notice of the hostile character of his claim. This notice could not be given or imparted to her until she was capable in law of receiving it. Facts which might amount to notice in a case where the party sought to be affected was not an infant can have no application whatever to a case like this.

It is believed that no case can be found where an infant two months old has been affected with notice to its prejudice by the conduct of others. We hold then that Hettie's infancy as well as the infancy of the plaintiffs made it impossible to change or affect them with notice of the nature, character, or extent of the defendant's claims in or to the land in controversy, or of the nature of the title under which he entered; and, therefore, they were not ousted, and the defendant's possession never became adverse. It is true the defendant entered under a deed which on its face purported to convey the entire estate; but this circumstance does not furnish an exception to the general rule already stated, where some of the parties are joint tenants, tenants in common, or coparceners.

In every such case notice of the hostile character of such entry and claim seems to be necessary. What is notice within this

rule, or how the same may be given, or what facts will constitute notice, it seems unnecessary to consider at this time, for the reason that the disability of the plaintiffs rendered any notice impossible.

The judgment of the court below must be reversed, and the cause remanded for a new trial.

On rehearing had.

[Filed June 8, 1888.]

STRAHAN, J.—A rehearing of this case was allowed for the purpose of enabling the court to further consider a question not made upon the original argument, and which was not noticed in the opinion. The question is, what effect did the Statute of Limitations have upon the interest in the land in controversy which descended to Mrs. Northrop upon the death of Hettie, and which became vested in the plaintiffs upon their mother's death. The same principles of law must be applied to this interest which is applicable to the others, except that if Marquam's possession was adverse during the lifetime of Mrs. Northrop, and she had notice of such adverse possession, then the Statute of Limitations commenced to run as against such interest and was not stopped by her death.

The rule is subject to but few exceptions, that when the Statute of Limitations has once commenced to run in any case it will not cease to be arrested in its operation by any subsequent event not within the saving clause of the statute. (Wood on Limitation of Actions, § 6.) The only essential difference, therefore, between this interest and the others grows out of the question of notice and the manner in which it may be imparted. Mrs. Northrop did not labor under any disability at the time this descent was cast upon her, and she was capable of being informed and having notice of the nature, character, and extent of Marquam's possession, and whether it was adverse or not.

The issue is narrowed down to a few simple questions of fact which must be found upon another trial, the present record being entirely silent on the question of notice. With this modification of the views of the court already expressed the cause is remanded for a new trial.