IN THE OREGON TAX COURT

MULTISTATE TAX COMMISSION et al,
*v.*
The DOW CHEMICAL COMPANY,
(TC 1835)

William D. Dexter, General Counsel, Multistate Tax Commission, and Joel M. Green, Counsel, Multistate Tax Commission, Tumwater, Washington, and Elizabeth S. Stockdale, Assistant Attorney General, Department of Justice, Salem, represented petitioners.

Neil Papiano and Harold K. Robbins, Iverson, Yoakum, Papiano & Hatch, Los Angeles, California, and David A.

Rhoten, Rhoten, Rhoten & Speerstra, Salem, represented respondent.

Opinion in part for petitioners and in part for respondent rendered November 24, 1982.

## CARLISLE B. ROBERTS, Judge.

Petitioner, Multistate Tax Commission (MTC), is an agency created by the enactment of 19 states, including the State of Oregon. Pursuant to Article VIII of the Compact which has been adopted by legislatures in all the member states, MTC is granted the authority to make examinations of the records of certain multistate-multinational corporations for tax audit purposes. (Article VIII is a part of Oregon Revised Statutes 305.655.)

The respondent, Dow Chemical Company (Dow), is a foreign corporation conducting business activities within the State of Oregon and within other member states of the Compact. The States of Alaska, Idaho, Kansas, Nebraska, New Mexico, Oregon and Utah authorized MTC to audit the records of Dow and its subsidiary and affiliated corporations for state income tax purposes. (Petition for Order, ¶ 7.)

In a letter to Dow on May 18, 1982, MTC requested that certain records and data be made available at the commencement of an audit scheduled for June 21, 1982. (Def Ex A.) Dow stated in court that it attempted to produce all items requested on June 21, 1982. (Affidavit of Bruce V. Ecklund, ¶ 9.) Mr. Eugene B. Fischer, National Audit Manager for MTC, confirmed this statement by testifying:

"* * * Mr. Ecklund had the information that we had requested in our letter of May 18th available and ready for us to look and that we would — would have access to that * * *." Tr 23.)

Mr. Fischer testified that he then orally requested that the corporate minutes of Dow and its subsidiary and affiliated corporations be made available for the audit. The witness testified that Mr. Glenn White, Director of Dow's Tax Department, declined to provide general access to the corporate minutes, expressing concern about confidentiality of the records, suggesting "that we might want to continue on with

the audit * * * and, if * * * we come across specific instances whereby we were to request specific minutes, maybe he would show them to us." (Tr 25.) Mr. White submitted an affidavit stating that he had assured the auditors "* * * that if their development of facts showed a need for Board of Directors minutes respondent was prepared to discuss permitting the auditors to review any minutes they reasonably desired." (Affidavit of Glenn W. White, at 3.)

Failing to reach a solution concerning the board minutes which the audit team deemed satisfactory, the team left Dow's premises and reported the foregoing episode to its superiors.

Upon motion by the petitioner, an Order to Show Cause was issued, requiring the respondent to make available certain records for the purpose of a joint income tax audit or to show cause why it had not done so. It was also requested that respondent be required to waive the relevant statutes of limitation until proceedings in this case were resolved or for the respondent to show cause why such an order should not be issued. A hearing on these matters was held on October 6, 1982.

■      Oregon's adoption of the Multistate Tax Compact is embodied in ORS 305.655. Article VIII of the Compact empowers MTC to conduct tax audits at the request of member states and to examine documents in connection with audits. Article VIII also provides that the court of any state on behalf of which the audit is made may enforce MTC's requests for documents; therefore, jurisdiction is conferred upon this court to determine the issues raised.

It appears that access to the corporate minutes is the primary issue since Dow has stated "* * * respondent has no intention of withholding those items the MTC requested in its 18 May 1982 correspondence. * * *" (Opposition of Respondent to Order to Show Cause, at 5.)

The respondent bases its position in regard to producing the corporate minutes on its belief "* * * that minutes contain a great deal of proprietary or other materials which are simply irrelevant to any tax determination, but that if the auditors would identify subject areas pertinent to their audit,

corresponding minutes would be produced. * * *'" (Supplemental Memorandum of Respondent Re Order To Show Cause, at 4.)

Petitioner contends that corporate minutes are relevant, may lead to relevant information and were requested pursuant to a legitimate auditing purpose.

■ In *U.S. v. Powell,* 379 US 48, 85 S Ct 248, 13 L Ed2d 112, 14 AFTR2d 5942 (1964), the court refused to require that the Internal Revenue Service show probable cause before enforcing the Service's request for taxpayer's records and held that there was no need for showing cause for suspecting fraud before such examination would be allowed. The court set out a four-point formula for allowing the Service access to taxpayer's records:

(1) The investigation is conducted for a legitimate purpose;

(2) The inquiry may be relevant to the purpose;

(3) Information sought is not already in the Service's possession; and

(4) Administrative steps required by the Internal Revenue Code have been followed.

Using this formula for determination:

The court allowed access to a church's corporate minutes in order to reach a fair determination as to continuing the tax exempt status of the church. *U.S. v. Coates,* 526 F Supp 248, (DC Calif 1981), 49 AFTR2d 82-776.

A third-party summons was upheld to require an accountant to produce books, records and other documents for tax years 1970 to 1977. The court denied production of 1970-1972 records because no show of relevance was made but, based upon a standard that inspection might throw light on the correctness of the taxpayer's return, the court allowed inspection of 1973-1976 records. *U.S. v. Goldman,* 637 F2d 664 (9th Cir 1980), 46 AFTR2d 80-6102.

*U.S. v. Sun First National Bank of Orlando,* 510 F2d 1107 (5th Cir 1975), 35 AFTR2d 75-1168. The enforcement of an IRS summons on a bank for documents of separate trust accounts was upheld. Trust committee minutes were included

in the requested documents. The enforcement was upheld because there was a good faith audit under way and the documents sought were likely to be relevant and material.

In *U.S. v. Arthur Young and Company*, 496 F Supp 1152 (DC NY 1980), 46 AFTR2d 80-5857 (*aff'd in part, reversed in part*, 677 F2d 211 (2d Cir 1982), 49 AFTR2d 82-1107), the court held that the four requirements of *Powell* had been met and the defendant had the burden of showing that enforcement would be an abuse of the court's process.

In determining the relevancy of requested records, the court stated that a "sufficiently relevant standard" pursuant to investigations applied to categories of documents, not every single document within a category need be described in the request for records. *U.S. v. Harrington*, 388 F2d 520, 524 (2d Cir 1968), 21 AFTR2d 456.

Corporate minutes are a category and it would have been reasonable for petitioners to list them in its letter to Dow dated May 18, 1982.

■ 26 USC § 7602 allows the Internal Revenue Service to "examine any books, papers, records, or other data which may be relevant or material to such industry; * * *." In *U.S. v. Acker*, 325 F Supp 857 (DC NY 1971), 27 AFTR2d 71-933, the taxpayer had allowed access to minutes of boards and executive committees of the parent corporation and some of its affiliates for approximately 10 years before refusing unlimited access, alleging that many minutes were not relevant or material. The court analogized an IRS examination to an audit and held that IRS agents, as well as accountants, must inevitably look at things that are irrelevant and immaterial to avoid overlooking some that are relevant and material. Only the auditor can make the decision.

The respondent in this suit alleged that references to federal cases dealing with IRS investigations "* * * are inappropriate where Oregon has adopted its own standard for evaluating a tax agency's request for a state taxpayer's records." (Supplemental Memorandum of Respondent re Order to Show Cause, at 14.) Mr. Oscar C. Quoidbach, Operations Manager for the Oregon Department of Revenue, Corporate Audit Program, testified that in Oregon: "* * * We have asked our auditors in all instances to look at corporate

minutes, as well as other documentation." (Tr 48.) When asked "How do you determine that certain minutes are relevant?" the witness replied: "By looking at all of the minutes * * *. It's the only way you can tell which ones are relevant." (Tr 53-54.)

In *Multistate Tax Comm. v. Merck & Co., Inc.*, 289 Or 707, 617 P2d 1371 (1980), the appellant resisted production of corporate minutes plus other documents. A challenge was based upon the breadth of the order and the relevance of requested materiel. The court ruled that the subject records were "* * * reasonably relevant and necessary to a legitimate Commission purpose of conducting a joint state income tax audit * * *" and upheld the production order (289 Or at 716.)

The requirements of "reasonably relevant" and "legitimate Commission purpose" are almost identical with the requirements of the *Powell, supra,* test. Therefore, the state standard for the production of documents for investigatory purposes is closely akin to the federal one.

Several participating states requested the petitioner to audit the respondent. Mr. Eugene Fischer, testifying for MTC, stated:

> "We would like to review the minutes of the corporation not only to determine the propriety of combined reporting but also to determine if there was nexus on the part of certain entities of Dow within the state, to determine the appropriateness of income versus nonincome classification for reporting purposes, to determine if the factors were reported correctly, for determining if there were other areas of income and expense reported correctly. We review the minutes for many reasons." (Tr 34-35.)

The court concludes that the proposed audit is for a "legitimate Commission purpose" and the court is satisfied that the minutes may be relevant and material to a proper audit.

The respondent has attested that if specific minutes are requested, they will be produced; but, until the petitioner knows what is contained therein, it cannot describe them with specificity. If the party being audited were allowed to determine what is or is not relevant, the auditing process would be

severely jeopardized. Therefore, some irrelevant and immaterial matter inevitably must be perused in order to avoid overlooking that which is relevant.

■ The respondent has expressed concern over producing minutes with proprietary information or information relating to internal problems. Mr. Fischer, MTC's National Audit Manager, testified that he indicated to the respondent that auditors were bound by law to keep documents confidential and that safeguards were employed to keep all matters in the audit confidential. (Tr 25.)

Article VIII, ¶ 6, of the Compact mandates:

"Information obtained by any audit pursuant to this Article shall be confidential and available only for tax purposes to party states, their subdivisions or the United States. * * *"

The respondent has failed to show that there is an actual risk that any proprietary information found in the minutes will not be held in confidence. This court has found that the requested minutes may contain relevant and material information. The respondent cannot prevent access to the information merely because of a nebulous hypothetical risk. *Eola Concrete Tile & Prods. Co. v. Dept. of Rev.,* 288 Or 241, 603 P2d 1181 (1979); *Dept. of Rev. v. D. R. Johnson Lumber Co.,* 289 Or 679, 617 P2d 603 (1980); *Northrop v. Marquam,* 16 Or 173, 193, 18 P 449, 460 (1888). Courts expect corporations (which have no legal existence except through the grants of government) to aid government in ascertaining the just tax to be imposed on the corporation (the receipt of tax revenues being indispensable to the maintenance of the benefits of government). The investigative power of government is essential to the administration of tax laws.

The petitioner has moved this court to stay the several applicable statutes of limitation until the audit can be completed, stating:

"If a court does not exercise its discretion to apply equitable principles and estop an uncooperative taxpayer from relying on the statutes of limitations, taxpayers would be encouraged to use a string of delaying tactics (including court actions) until the statute of limitations expire. * * *" (Memorandum of Points and Authorities in Support of Petitioners, at 14.)

As this court noted in *Rainier Manufacturing v. Dept. of Rev.,* 5 OTR 444 (1974), all persons of good will, including judges, prefer that serious problems be resolved on the merits and not on a technical procedural point. Petitioner's request for a waiver of the statutes of limitation by respondent is understandable. But, as Mr. Chief Justice Warren has stated:

"It probably would be all but intolerable, at least Congress has regarded it as ill-advised, to have an income tax system under which there never would come a day of final settlement * * *. Hence, a statute of limitation is an almost indispensable element of fairness as well as of practical administration of an income tax policy." (*Rothensies v. Electric S. B. Co.,* 329 US 296, 302, 67 S Ct 271, 91 L Ed 296, 47-1 USTC ¶ 9106, 35 AFTR 297 (1946).)

Statutes of limitation are, by definition, arbitrary and their operation does not discriminate between the just and unjust claim. They have come into the law not through the judicial process but through legislation. *Chase Securities Corp. v. Donaldson,* 325 US 304, 314, 65 S Ct 1137, 89 L Ed2d 628 (1945).

■ This court should not read into statutes of limitation an exception which has not been embodied therein by the legislature unless some major failure by government, creating an estoppel by conduct, is established. This has not been done. There has been no good reason given in this suit for tolling the statutes. The court requires government to obey its own statutes, even as it requires corporations to do so. *Domogalla et al v. Dept. of Rev.,* 7 OTR 242 (1977). (The court suspects that in this case, as in so many others, the basic problem is government's failure to fund its investigatory agencies sufficiently. This is an old story, and not a ground for tampering with the legislatures' statutes of limitation. Government can make its apparatus function if it wants to.)

Therefore, the petitioner's motion for a tolling of the statute of limitations until the audit is completed is hereby denied. (This ruling does not, of course, limit the petitioners' right to determine tax liabilities for closed years, where such data are necessary to proper auditing of open years. *U.S. v. Goldman, supra.*)

IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

1. That this court has jurisdiction of the parties and the subject matter of the petition to show cause;

2. That the Multistate Tax Commission is authorized to conduct audits to determine corporate taxable income allocable to a member state and that Article VIII of the Multistate Compact empowers the commission to examine those books, records, papers, accounts or other documents and personnel of a taxpayer (as defined in the Compact) and its affiliates as may be material and relevant;

3. That in accordance with the foregoing, Dow and its subsidiary corporations shall make available to the auditors authorized by the commission, at Dow's corporate headquarters or such other location as may be mutually agreed upon, within 60 days of this order, any of their account books, papers, records or other documents, including corporate minutes of Dow and its subsidiary and affiliated corporations, for examination to the extent that such examination is material and relevant to the income tax audit by the MTC;

4. That throughout the required audit, the parties shall plan the work and take the steps necessary to place the least burden on the respondent and its affiliates and on the representatives of the commission as is practicable within the framework of a proper audit; and

5. That this court retain jurisdiction to resolve any disputes in the implementation of this order.