Argued March 1, decided March 14, 1911.

## COBB v. KLOSTERMAN.

[114 Pac. 96.]

INFANTS—PROCESS—SERVICE—SUFFICIENCY.

1. Under Section 55, L. O. L., requiring summons to be served on a minor under 14 years of age by delivering a copy thereof to him personally and to his father, etc., and Section 398, providing that where there is more than one defendant service of summons may be made by serving only one copy of the complaint, etc., a return of service of summons on an adult and her two infant children under 14 years of age, showing personal service on the adult and on one of the infants as if of full age, is insufficient, and the court acquires no jurisdiction to render a decree against the infants.

INFANTS—FORECLOSURE OF MORTGAGE—JURISDICTION—SALE.

2. Where the court, in a suit against infants to foreclose a mortgage executed by their deceased ancestor, acquired no jurisdiction of the

infants, a sale under a foreclosure decree did not give title to the purchaser as against the infants, but the purchaser would be required to surrender possession on the infants tendering him the principal and interest on the mortgage debt, together with taxes paid by the purchaser.

ACTION—DEFENSES—EQUITABLE DEFENSE.

3. An equitable defense cannot be interposed in an action at law.

INFANTS—ADVERSE POSSESSION AGAINST.

4. Under Section 17, L. O. L., providing that the time of disability of infancy shall not be a part of the time limited for the commencement of an action, etc., adverse possession is not available against infants.

COVENANTS—BREACH—DAMAGES.

5. The measure of damages for breach of covenant of seisin is, in the absence of any contrary showing, the amount the grantee paid in settlement of an adverse title, and a grantor who merely contests the liability of the grantee to pay at all may not complain of the judgment for the amount paid by the grantee.

COVENANTS—BREACH—ACTIONS—BURDEN OF PROOF.

6. A grantee suing for a breach of covenant of seisin, based on his acquisition of an adverse title without notice to the grantor, has the burden of proving the validity of the paramount title.

From Multnomah:  JOHN B. CLELAND, Judge.

Statement by MR. JUSTICE BURNETT.

This is an action by S. B. Cobb against Sophia H. Klosterman, John Klosterman, Mary C. Mayer, and E. J. Alex Mayer, for breach of covenant of warranty. From a judgment in favor of plaintiff, the defendants appeal. The facts as disclosed at the trial are as follows:

On December 31, 1906, the defendants conveyed certain real property to the plaintiff by a deed containing a covenant that the grantors were seised in fee simple of the real property, and that they and their successors would warrant and forever defend the same against the lawful claims and demands of all persons whomsoever, except certain municipal liens of the city of Portland. In this action upon that covenant the plaintiff alleges, in substance, as a breach thereof that the defendants were not the owners of the real property, but that Elmer Peck, Lloyd Peck, and M. L. Peck were such owners and had sued the plaintiff to quiet their title in the real property, and to prevent his ouster as a result of their suit he had

paid for their outstanding claim the sum of $1,000, which defendants had not repaid, and for which sum he demands judgment.

The defendants answered, denying the title of the Pecks and the compulsion inducing the plaintiff to buy in their interest. They affirmatively allege that "Elmer Peck and Lloyd Peck are the children and heirs at law of C. W. Peck, deceased, and M. L. Peck is the widow of said C. W. Peck." The answer further alleges in substance that during the life of C. W. Peck, and while he was the owner of the real property in question, he with his wife, M. L. Peck, executed two mortgages upon the property, the first of date September 5, 1890, to Philippina Wolf, for $1,400, and the second of date August 9, 1892, to B. H. Bowman, for $6,000; that afterwards C. W. Peck died and M. L. Peck, his widow, was appointed as administratrix, in which capacity she continued until the final settlement of the estate August 6, 1896; that on March 30, 1894, Bowman, the second mortgagee, commenced a suit for the foreclosure of his mortgage, making M. L. Peck, in her individual capacity and as administratrix, Elmer Peck, Lloyd Peck, Philippina Wolf, et al., defendants. As to the Pecks the return of the sheriff upon the summons in that suit is as follows:

"State of Oregon,    ⎱ ss.
    "Multnomah County ⎰

"I, Penumbra Kelly, sheriff of said state and county, do hereby certify that I served the within summons within said state and county on the 16th day of April, A. D. 1894, on the within named defendants, M. L. Peck and Lloyd Peck, Elmer Peck and M. L. Peck as administratrix of the estate of C. W. Peck, deceased, by delivering a copy thereof, prepared and certified to by me as sheriff to M. L. Peck, Elmer Peck and M. L. Peck as administratrix in person.

"Penumbra Kelly,
"Sheriff of Multnomah County.
"By Elmer S. M. Myer, Deputy."

The answer goes on further to state, in substance, that on June 19, 1894, upon the application of the plaintiff Bowman, the circuit court appointed, as guardian *ad litem* for Lloyd Peck and Elmer Peck, J. R. Stoddard, who filed an answer for the minors, denying any information sufficient to form a belief as to the allegations of the foreclosure complaint. The answer in the case at bar further recites that Philippina Wolf appeared in the foreclosure suit and set up her mortgage, asking for a decree of foreclosure; that a decree was finally rendered foreclosing both mortgages; that an execution was issued; that the property was sold to one M. A. Stratton for $4,000; that the sale was confirmed; that Stratton assigned his certificate to the First National Bank of East Portland; that on March 13, 1896, the sheriff of Multnomah County executed and delivered to the bank his official deed to the property; that thereupon the bank took possession of the property, claiming title thereto under the sale, and retained its possession until its conveyance afterwards mentioned. The history of the conveyances from that on until it was finally conveyed to the defendants Sophia H. Klosterman and Mary C. Mayer, March 11, 1899, is then recited, and it is alleged "that the said possession of said property by each and all of the above-named corporations and persons was open, notorious, exclusive, and under claim and color of title, and hostile to all other persons, and was well known during all of said times to the said M. L. Peck, Elmer Peck, and Lloyd Peck, and was at no time disputed or questioned by them, or any of them, but, on the contrary, the said M. L. Peck, Elmer Peck, and Lloyd Peck acquiesced in and consented to said sheriff's sale and said taking and holding possession thereunder, and all the claims and acts of the persons claiming title under said sale which are mentioned in this answer, until the bringing of the suit to quiet title mentioned in the complaint herein,"

which, it was stipulated, occurred August 28, 1908. The defendants further plead that they and their predecessors have paid sundry taxes on the premises, setting out the amounts, and some street improvement liens, and stated that at the time of filing the suit to quiet title there were valid subsisting street improvement liens on the property aggregating more than $3,000, which are yet unpaid. They further state in substance that the rents and profits of the property are not sufficient to keep up the necessary repairs; that the use and occupation of the property is of no value; and that at the time of the conveyance to plaintiff the property was not worth more than $4,000, and, subject to the street improvement liens, is not now worth more than $5,000.

The reply admits the execution of the mortgages and the commencement of the suit to foreclose, but denies that the summons was served upon any of the Pecks. As to the matter in the answer tending to show title by adverse possession up to the suit to quiet title, it denies that the adverse possession was known to or acquiesced in by any of the Pecks, and alleges that Elmer Peck and Lloyd Peck were both minors incapable of consenting to or being bound by such adverse possession. It is stipulated that at the commencement of the suit to quiet title as plaintiffs, August 28, 1908, Lloyd was 21 years and six months of age, and Elmer was under the age of 21 years.

This action resulted in a judgment in the circuit court in favor of plaintiff, and the defendant appeals.

AFFIRMED.

For appellant there was a brief over the names of *Messrs Veazie & Veazie* with an oral argument by *Mr. Arthur L. Veazie.*

For respondent there was a brief and an oral argument by *Mr. Samuel B. Huston.*

Mr. Justice Burnett delivered the opinion of the court.

1. In the light of the stipulation about the ages of Elmer Peck and Lloyd Peck, the eldest of them was about 7½ years of age on April 16, 1894, the date mentioned in the return of the sheriff upon the summons in the foreclosure suit. Section 55, L. O. L., provides that a summons shall be served upon a minor under the age of 14 years by delivering a copy thereof, together with a copy of the complaint, certified as is therein required, "to such minor personally, and also to his father, mother, or guardian, or if there be none within this State, then to any person having the care or control of such minor, or with whom he resides, or in whose service he is employed." Section 398, L. O. L., provides that "when there is more than one defendant in the suit, service of the summons may be made by serving only one copy of the complaint, the same to be served on the defendant, designated by the plaintiff or his attorney, by a direction indorsed on such summons." In *Harris* v. *Sargeant,* 37 Or. 41 (60 Pac. 608), the return upon the summons reads thus:

"I hereby certify that I received the within summons on the ninth day of April, A. D. 1889, and served the same on the twenty-fifth day of April, A. D. 1889, in Benton County, Oregon, on the defendants S. S. Harris, L. E. Harris, and L. M. Harris, by delivering to each of said defendants a true and correct copy of said summons prepared and certified to by me as sheriff, the above-named defendants being minors; also by delivering to their guardian, Mrs. Frances Kemp, for each of them, a true and correct copy of said summons, prepared and certified to by me as sheriff; also by delivering to the defendant S. S. Harris and his guardian, Mrs. Frances Kemp, each a copy of the complaint, prepared and certified to by C. G. Coad, county clerk of Polk County, Oregon."

Certain real property was sold by virtue of a decree rendered in pursuance of that return. In an action of

ejectment brought against the purchaser whose deed depended upon the decree thus rendered, this court held that the return was not sufficient to give the court jurisdiction over the property and persons of the minors. The reason assigned was that the return did not show a delivery of a copy of the summons to the minors personally, and, generally, that the return must conform to all the requirements of the statute, as it will be construed strictly, and that this must appear from the sheriff's return; otherwise the court does not acquire jurisdiction. Applying the reasoning of that case to the return in question here, we see that no attempt is made to show any delivery whatever to the minor Lloyd Peck, and, giving the return the most favorable construction possible, it would be valid as against Elmer Peck only, if he were at the time above the age of majority, for the return shows that he was served as if he were such an adult, whereas the conceded fact is he was a minor under the age of 14 years. Within the meaning of *Harris* v. *Sargeant,* 37 Or. 41 (60 Pac. 608), the circuit court had no jurisdiction to render a decree of foreclosure against the minors.

2. But the defendants here contend that they are successors in interest to the purchaser at the sale, who was subrogated to the rights of the mortgagees, and hence that they are in the situation of a mortgagee in possession. Conceding, without deciding, that they are in such a situation and that the purchase by a stranger to the decree at the execution sale in such a suit would bring about such a result, yet the foreclosure suit and the sale in pursuance thereof would not accomplish more than this; it would not give title to such a purchaser as against the minors. Hence, when claiming under the deed to himself by the defendants, the plaintiff found himself where, in any event, he would have to surrender possession of the property when the minors tendered him the

principal and interest on the mortgages given by their father, together with the taxes paid upon the land.

3. In the suit against him by the Pecks to quiet the title he could possibly have urged the facts stated in this answer with the result that the Pecks might have been compelled to redeem, but that would not make legal title for him. In effect, the defendants here have undertaken to set up as a defense in this action at law what might have been an equitable defense to the suit to quiet title. This cannot be done in an action at law, for the rule is well settled in this State that an equitable defense cannot be interposed to an action at law.

4. The foreclosure suit did not pass the legal title so the defendants could convey the same to the plaintiff, and hence there was a breach of their covenant of seisin and of warranty. They cannot escape this by any showing that is made about adverse possession, for, considering the age of the minors at the time of the institution of the suit to quiet title, adverse possession would not run against them. Section 17, L. O. L.; *Northrop* v. *Marquam,* 16 Or. 173 (18 Pac. 449).

5. It appears that in settlement of the suit to quiet title and the acquisition of the title of the Pecks to the property in question, the plaintiff paid them $1,000, and that is the measure of damages for the breach of the covenant, if nothing else is shown. As against this the defendants here claim that M. L. Peck, the widow and administratrix, was properly served with the summons in the foreclosure suit, and hence she is bound by that decree, and that in any event the plaintiff here could not recover for any amount which he paid to her. However, if the amount paid was apportionable at all among the Pecks, there is nothing in the pleadings here by which the court could make such an apportionment. The defendants here do not in their answer dispute the amount of the payment; they only contest the liability or compulsion

of the plaintiff to pay at all. If they intended to attack the part of the payment going to Mrs. Peck, the widow, they should have framed their pleadings accordingly, but they have not done so.

6. Of course, by settling the suit with the Pecks without notifying the defendants here and calling upon them to defend in that suit, the plaintiff assumed the burden in this case of proving paramount title in the Pecks, to which he yielded, but the superior estate of at least Lloyd and Elmer Peck is established beyond question, because the court never acquired jurisdiction over them to divest them of their property.

The judgment is affirmed.                    AFFIRMED.