Appeal from Fourth District

\

# BAKER v. GOODMAN.

No. 3471.  Decided December 2, 1920.  Rehearing Denied December 27, 1920.  (194 Pac. 117.)

1. ADVERSE POSSESSION—FACTS HELD NOT TO SHOW THAT DEFENDANT OBTAINED AND RETAINED LAND BY FRAUD.  In ejectment, plaintiff's contention that defendant, claiming by adverse possession under a tax deed, had obtained and retained possession of the land by fraud, *held* not sustained by the record.

2. MORTGAGES—RULE OF POSSESSION AND IMPROVEMENT BY MORTGAGEE NOT APPLICABLE, WHERE HE CLAIMS BY ADVERSE POSSESSION UNDER TAX DEED.  The administrator's contention that mere possession and improvement by the defendant mortgagee, who took possession before breach of condition and with permission, cannot constitute adverse possession until after maturity or breach of condition, does not apply where defendant relies solely on adverse possession, founded on a county tax deed.

3. ADVERSE POSSESSION—DEFECTIVE TAX DEED GIVES COLOR OF TITLE.  A tax deed, even though defective, is sufficient to give color of title.[1]

4. LIMITATION OF ACTIONS—APPOINTMENT AND DISCHARGE OF ADMINISTRATOR INSUFFICIENT TO SET STATUTE IN MOTION.  Where an administrator was appointed, and discharged without filing an inventory or taking any steps to protect the interests of the heirs, as the statutes require, the administration is a nullity, and is insufficient to set the statute of limitations in motion against those interested in the estate in favor of one holding land adversely.

5. LIMITATION OF ACTIONS—TITLE NOT OBTAINED AS AGAINST HEIRS UNDER DISABILITY.  A record disclosing that defendant purchased tax deed from the county and immediately entered into possession, and has paid taxes each year since for the required time and made valuable improvements, holding openly and notoriously, *held* to establish title by adverse possession against all parties except those under disability, not attaining their majority at a date more than two years prior to the com-

[1] *Welner* v. *Stearns*, 40 Utah, 185, 120 Pac. 490, Ann. Cas. 1914C, 1175.

mencement of the action, in view of Comp. Laws 1917, § 6463; defendant being entitled to have title quieted, except as to heirs under disability.

On Rehearing.

6. EXECUTORS AND ADMINISTRATORS—CLAIM AND EXPENSE OF ADMINISTRATION PAYABLE OUT OF ESTATE RECOVERED AS BELONGING TO MINOR HEIRS. In an administrator's ejectment action, where title was quieted in defendant, holding by adverse possession under tax deed as against all heirs except those under legal disability, whose shares passed to the administrator, held, that a claim against the estate, as well as the necessary expenses of administration, should be paid out of the estate.

7. EJECTMENT—DEFENDANT CHARGEABLE WITH REASONABLE RENTAL VALUE, NOT INCOME RECEIVED. In an administrator's ejectment action, where title was quieted in defendant, except as to the shares of certain minor heirs, the defendant is chargeable on such shares with the reasonable rental value during such possession, and not the income actually received.

Appeal from District Court, Fourth District, Utah County; *A. B. Morgan,* Judge.

Action by Lee L. Baker, administrator of the estate of Hannah M. Inglefield, deceased, against James Goodman. Judgment for defendant, and plaintiff appeals.

MODIFIED and REMANDED, with directions.

*Baker & Baker,* of Provo, for appellant.

*Harvey Cluff,* of Provo, for respondent.

TOBIN, District Judge.

This is an action in ejectment, brought by the plaintiff as administrator de bonis non, to recover possession of 30 acres of land. The intestate, Hannah M. Inglefield, died September 26, 1903, and left surviving her a widower and eight children. On the 2d day of September, 1902, said decedent purchased 35 acres of land in Utah county. This land had

been sold to Utah county in 1902 for the 1901 taxes, and had not been redeemed. On September 19, 1902, immediately after the purchase of said land by said decedent, the decedent mortgaged said tract to one Elizabeth Brereton as security for a promissory note in the principal sum of $400, maturing September 19, 1907. In March, 1903, said decedent and her husband conveyed to the defendant, James Goodman, by warranty deed, 5 acres of the 35 acres hereinbefore mentioned. The remaining 30 acres is the land in controversy in this case, and is described as follows:

"Commencing at the southeast corner of the southwest quarter of section 26, township 6 south, of range 2 west, Salt Lake meridian; thence north 10 chains; thence west 5 chains; thence north 10 chains; thence east 5 chains; thence south 7.50 chains; thence east 20 chains; thence south 12.50 chains; thence west 20 chains to beginning."

. On September 16, 1903, and immediately after the death of decedent, her widower, John Inglefield, borrowed a sum of money, $50 or $100, from the defendant, for the purpose of paying funeral expenses for his wife's funeral. As security for the payment of this money, on demand, John Inglefield attempted to convey by warranty deed another 5 acres of said land to the defendant, and permitted the defendant to go into possession immediately. In 1905 the defendant purchased the outstanding mortgage from the estate of the said Elizabeth Brereton, and took an assignment thereof which assignment has never been recorded.

Immediately after the death of decedent, the widower moved from the land in controversy to Mammoth, Utah, abandoning his family. Lottie Emmons, the oldest daughter of the deceased, cared for the minor children of the deceased, and in the fall of 1906 she moved from the land in controversy, where she had been residing since the previous spring, to Mammoth, Utah, taking the children with her. Lottie Emmons testified that she had paid the taxes on the property after her mother's death, but that she had not paid taxes since 1906.

On May 21, 1907, letters of administration on the estate of said decedent were issued to W. H. Brereton, son of said

Elizabeth Brereton. He immediately published notice to creditors in the usual form, requiring the presentation of claims before September 23, 1907, and had appraisers appointed. On August 6, 1907, before the expiration of the time for the presentation of claims, and without filing any inventory and appraisement, or approving or filing any claims, the administrator petitioned for his discharge, stating that he was unable to find any property belonging to the estate. On August 17, 1907, the court discharged Mr. Brereton as administrator, and released his sureties; the order of discharge stating that it appeared that there was no estate to administer. No inventory, final accounting, or decree of distribution has ever been made. Mr. Brereton testified that he took an interest in the appointment of the administrator of the estate of Hannah M. Inglefield, because his mother was holding the mortgage, and that after he had looked over the property, and had a talk with Mr. Goodman, and had sold the mortgage to Mr. Goodman, he filed his petition for discharge as administrator.

On July 2, 1907, while said Brereton was acting as administrator, the defendant, Goodman, purchased from Utah county, for the sum of $28.13, a tax deed reciting in part as follows:

"Quitclaim Deed.

"Utah county, a municipal corporation of the state of Utah, by Elias A. Gee, clerk, grantor, of Utah county, state of Utah, hereby quitclaims to James Goodman, grantee, of Provo City, Utah county, state of Utah, for the sum of eight and 13/100 dollars, the following described tract of land, situated in Utah county, state of Utah, to wit: "S. ⅝ S. W. of the S. E. ¼; E. quarter; S. E. of the S. W. quarter of Sec. 26, Tp. 6 S., R. 2 E., Salt Lake meridian, area 35 acres.

On August 3, 1907, prior to the date of filing the petition for discharge of Administrator Brereton, the defendant caused the outstanding $400 mortgage to be released of record. The defendant has admittedly been in possession of the land in controversy since July 2, 1907, and has paid all the taxes on the same since that time.

Lottie Emmons, daughter of the deceased, Hannah M.

Inglefield, testified that on or about the 6th day of July, 1907, she had a conversation with the defendant, in which he stated in substance that he was living on the property in controversy, that it had cost him about $1,000, and that if he were repaid that amount the heirs of Hannah M. Inglefield could have the property. Mrs. Emmons also testified that she knew some one was taking steps to probate the land at that time, and had received a probate notice after the date of the conversation just mentioned; that she had not been paid by any one for what she had paid for taxes or for funeral expenses.

The testimony shows that the amount expended by the defendant up to the time he took possession of the property in controversy was something more than $600, and not about $1,000, as represented by him. The testimony is also to the effect that up to the time of the trial of this action defendant represented that he owned the widower's share of the estate. At the trial he disclaimed having an assignment of the widower's interest, and amended his pleadings by striking therefrom the declaration of ownership of such interest.

The testimony shows that at the time the defendant took possession of the premises in question they were in a run-down condition, and that they had been greatly improved by the defendant for the purpose of making a home. The defendant testified that he had received about $2,000 out of the place, and admitted that he had sold 2,500 cubic yards of sand and gravel from the land in controversy, at a price of 10 cents a yard and upward. According to the testimony in the case, the defendant has never been repaid anything by any of the heirs, or by any one, on account of the money paid by him in connection with the property in controversy. There is no evidence that the defendant at any time informed any of the heirs that he held a tax deed from Utah county.

The plaintiff, Lee L. Baker, was appointed administrator of the estate of Hannah Inglefield, deceased, on the 7th day of March, 1919. After making demand upon defendant for an accounting, and for possession of the land in controversy, and upon refusal of defendant, the plaintiff commenced this action. The record shows that all of the children of Hannah

Inglefield, deceased, with the exception of the following, to wit; Jefferson Inglefield, Thomas Inglefield, and Carl Inglefield—had attained their majority more than two years prior to the commencement of the action at bar. The trial court entered a judgment quieting title to the land in controversy in defendant, from which judgment plaintiff appeals.

The question presented to this court upon appeal is: Has the statute of limitations barred plaintiff from recovery of possession of the land in controversy, or any part thereof, and is defendant rightfully entitled to his decree quieting title therein? The plaintiff contends:

(1) That the possession by the defendant of the land in controversy was obtained and retained by fraud, and for that reason no lapse of time, however great, will defeat the defrauded persons of their remedy against him, as the perpetrator of that fraud.

(2) That the statute of limitations is suspended during the period of vacancy in administration of a decedent's estate, and the rights of the creditors in the assets of the estate cannot be defeated, directly or indirectly, by lapse of time, where there has not been due administration, and where the statutory time allowed them for presentation of claims has not expired. So, when an administrator is discharged before completion of administration, the court cannot dispense with the usual mode of administration, but must appoint another administrator, and during the vacancy in administration one in possession of estate assets may not adverse the estate, but is chargeable therewith as an executor de son tort, and time does not begin to run in his favor until appointment of an administrator de bonis non.

(3) Mere possession and improvement of land of a decedent by a mortgagee, who takes possession thereof before breach of any condition by mortgagor, and with permission of the mortgagor, cannot constitute adverse possession until after maturity of the mortgage debt, or breach of condition of said mortgage by the mortgagor, if living, or by some one qualified to represent him, if dead.

The plaintiff contends also that—

"the tax deeds on which the court based and predicated its formal findings of fact as to defendant's title, color of title, and claim of right in and to the land in controversy are nullities, and should not have been received in evidence for any purpose whatever;" that "the description of these deeds is meaningless, and so vague and uncertain as to render them wholly void."

As to the plaintiff's first contention, that possession to the land in controversy was obtained and retained by fraud, we are of the opinion that this claim is not borne out by the record in the case.

Plaintiff's contention that the mere possession and improvement of land of the decedent by a mortgagee, who takes possession thereof before the breach of any condition by the mortgagor, and with permission of the mortgagor, cannot constitute adverse possession until after maturity of the mortgage debt, or breach of condition of such mortgage by the mortgagor, if living, or by some one qualified to represent him, if dead, is not applicable in this case, for the reason that the defendant is not claiming adverse possession as a mortgagee in possession, as against the mortgagor, after some condition has been broken. The defendant relies on adverse possession founded upon the tax deed from Utah county.

The tax deed in question, even though it be held to be defective, was sufficient to give color of title. This is the well-established law of this state. *Welner* v. *Stearns*, 40 Utah, 185, 120 Pac. 490, Ann. Cas. 1914C, 1175.

The defendant contends that the statute of limitations was set in motion on the 2d day of July, 1907, at the time he entered into possession of the land in controversy, when and while the administrator was acting, and that nothing has occurred to suspend its running. As to this question our statutes prescribe the manner in which estates must be probated. The statutes were not complied with in the case at bar. No inventory was filed, and the administrator was discharged prior to the expiration of the time for the presentation of claims, on the theory that there was no property belonging to the estate. Therefore the court never acquired jurisdiction

of the property in controversy. The record shows that Mr. Brereton took an interest in the appointment of an administrator of the said estate because his mother was holding a mortgage, and that after the mortgage had been sold to Mr. Goodman he filed his petition for discharge as an administrator. In other words, when the purpose for which he sought appointment had been accomplished, he asked for and was granted his discharge, without filing an inventory or taking any steps to protect the interests of the heirs. The law does not contemplate that an administrator can be appointed and be discharged without performing any of the duties that he is required to perform with reference to the property of the estate, and by the mere act of his appointment set in motion the statute of limitations, to the injury of those interested in the estate. For the reasons stated, in so         4 far as the issues in this case are concerned, the appointment of the former administrator of this estate may be considered as a nullity.

Eliminating the former probate proceedings that were had in the estate of Hannah Inglefield from the consideration of the case, is the defendant entitled to have title to the property in controversy quieted in him on the ground of adverse possession? The record discloses that the defendant purchased a tax deed from Utah county, and immediately thereafter, to wit, on the 2d day of July, 1907, entered into possession of the property in question; that he had paid taxes on the property during all the years since that date; that he had made valuable improvements on the same; that he had held the same openly and notoriously. We are therefore clearly of the opinion that the record discloses that all of the requirements of the law necessary to establish title by adverse possession to the land in controversy have been complied with, in so far as those whom the law presumes to have had notice, or those who were not under some disability recognized by the law, are affected. The question therefore is: Is the defendant entitled to have title to all of the property in controversy quieted in him as against all of the heirs of Hannah Inglefield?

Section 6463, Comp. Laws Utah 1917, provides:

"If a person entitled to commence an action for the recovery of real property, or for the recovery of the possession thereof, or to make any entry or defense, founded on the title to real property, or to rents or services out of the same, be at the time such title shall first descend or accrue, either: (1) Within the age of majority; or (2) insane; or (3) imprisoned on a criminal charge, or in execution upon conviction of a criminal offense, for a term less than for life—the time during which such disability continues is not deemed any portion of the time in this chapter limited for the commencement of such actions, or the making of such entry or defense, but such action may be commenced, or entry or defense made, within the period of two years after such disability shall cease, or after the death of the person entitled, who shall die under such disability, but such action shall not be commenced, or entry or defense made, after that period."

In *Winters* v. *Hainer*, 107 Tenn. 337, 64 S. W. 44, held: (1) Where defendants purchased a tract of land at a tax sale, the certificate describing the boundaries thereof, and took possession, inclosing a portion thereof, and afterwards inclosed the balance, the adverse possession extended to the whole tract, since the tax certificate was color of title, and the possession taken thereunder extended to the boundaries therein described; and (2) where plaintiffs were minors when defendant's adverse possession began, and are still minors, their right to contest defendant's right to land not barred. *L. T. Lumber Co.* v. *Southern Pine Lumber Co.* (Tex. Civ. App. 1912), 147 S. W. 604.

In *Harris* v. *McCrary*, 17 Idaho, 300, 105 Pac. 559 (1909), it was held, under section 4046, Rev. Code Idaho, which, in so far as the case at bar is concerned, is the same as our section 6463, that title by adverse possession cannot be acquired against minors during minority. It is held in *Pennington* v. *Earley*, 43 Atl. 707 (N. J. Sup. 1899), that there can be no adverse possession of land while the title is in an infant.

In *Cobb* v. *Klosterman*, 58 Or. 211, 114 Pac. 96 (1911), under a statute providing that the time of disability of infancy shall not be a part of the time limited for the commencement of an action, etc., adverse possession is not available against infants. In *Long* v. *Cummings*, 91 S. C. 521, 75

S. E. 134 (1912), held that, in an action to recover possession of land devised to plaintiffs by their father, while plaintiffs, at the time of trial, were only 22 and 24 years old, adverse possession, commenced after the father's death, was not a defense. There had been a sale under execution. The court said:

"At the time of the sale, the plaintiffs were infants of tender years, and have but recently attained their majority. Hence the defense of adverse possession cannot avail defendants."

See *Northrop* v. *Marquam* (1888) 16 Or. 173, 18 Pac. 449, in which the question of adverse possession as affecting the rights of infants is discussed at considerable length.

We are of the opinion that, under the section of our statute quoted, and the authorities, defendant's right to have title to the property in controversy quieted in him should not prevail as against any of the heirs of the estate of Hannah Inglefield who did not attain their majority at a date more than two years prior to the commencement of the action at bar. The decedent, Hannah Inglefield, at the time of her death, left surviving her as her heirs her widower and eight children. Under our law the widower was entitled to one-third of the estate and the children the remaining two-thirds. Under our view of the case, the defendant should prevail as against the interest in said real estate of those who were not under a disability for a period of two years prior to the commencement of the action at bar, to wit, John W. Inglefield, the widower, Mrs. Lottie Emmons, Mrs. Tillie Chivrell, Mrs. Stella Keplinger, Eva Inglefield, and Calvin Inglefield, but not as against Jefferson Inglefield, Thomas Inglefield, and Carl Inglefield. In other words, the defendant is entitled to have title quieted in three-fourths of the land, and the three children last named are each entitled to a one-twelfth interest in the land.

Much has been said on behalf of the defendant in this case concerning the valuable improvements placed on the land in question by him, and, on the other hand, it is contended that the defendant sold much valuable material from the land. At the proper time the defendant will have the opportunity to

show what amount was expended by him for improvements and taxes, and the heirs interested will likewise have the opportunity to show what, if anything, has been taken from the land by the defendant, by way of income, as reasonable rental value of the land, and for materials taken from the same.

In accordance with the views hereinbefore set forth we are of the opinion that the defendant is entitled to have title to three-fourths of the land quieted in him, and that the plaintiff, as administrator of the estate, is entitled to have title to one-fourth of the land in controversy quieted in him for the benefit of the three heirs, to wit, Jefferson Inglefield, Thomas Inglefield, and Carl Inglefield, subject to the conditions hereinafter set forth to be performed by the plaintiff as administrator of the estate, or by the heirs, subject, however, to the rights of the plaintiff as administrator of the estate.

In view of the peculiar history, circumstances, and facts of the case at bar, we feel constrained to make such an order as will effectually do equity to the parties concerned, and tend to prevent unnecessary delay and obviate further litigation; but in making such order this court does not wish to be understood as establishing rules that shall be followed generally, or applied to any case where the facts and circumstances are dissimilar to those appearing in this case. We are therefore of the opinion that the judgment of the court below should be modified, and the case remanded, with the directions: To enter a judgment quieting title to three-fourths of the property in controversy in the defendant; to ascertain the market value of the property, exclusive of the improvements, at the time of the commencement of the action; to ascertain the amount of taxes, both special and general, assessed and levied against the land, and paid by the defendant; to ascertain the amount received by the defendant as rental value of the land and from the sale of materials from the land; to deduct the amount paid by the defendant in taxes and improvements, together with interest thereon at 8 per cent. per annum, less the amount received by

him as income as reasonable rental value, and from the sale of materials, from such market value; to give the three heirs hereinbefore mentioned the option to pay the defendant, within 120 days after notice of such determination, the proportion of such difference that their interest bears to the entire land, and, if such payments are so made, then to enter a judgment quieting title to one-fourth of said property in said heirs, and, if the said heirs, or any of them, decline such option, then to sell the interest of the heir or heirs declining the option, and apply the proceeds of the sale, first to the cost of such sale, then pay to the defendant the proportion of the amount of such taxes and interest that the interest sold bears to the whole of the land, and then divide the balance of such proceeds between the heir or heirs declining the option and the defendant, in proportion of the market value of the land sold exclusive of improvements, at the time of the commencement of the action, and the value of the improvements chargeable to the land sold, less the proportion of the amount received by the defendant during his occupancy, as reasonable rental value, and from the sale of materials that the interest sold bears to the whole land. If it be determined that the amount received by defendant as reasonable rental value of the land, and from the sale of materials from the land, is in excess of the amount expended by the defendant in taxes and improvements, the trial court is directed to enter judgment quieting the title to one-fourth of the land in controversy in the heirs, and a judgment in favor of the heirs and against the defendant for such proportion of such excess as the interest of the heirs bears to the whole land. Costs to appellant.

Such is the order.

FRICK, WEBER, GIDEON, and THURMAN, JJ., concur.

CORFMAN, C. J., being disqualified, did not participate in the disposition of this cause.

*On Rehearing.*

TOBIN, District Judge.

Appellant has filed a petition for a rehearing and contends that one of the claims herein has been allowed and approved by the probate court. An examination of the record discloses that the claim referred to is a balance due for funeral expenses of Hannah M. Inglefield amounting to $9.00. While this court feels that, under a reasonable construction of its opinion the claim for the $9.00, above mentioned, is a claim against the estate of Hannah M. Inglefield, in order that there may be no misunderstanding concerning the matter, we hold that said claim, as well as necessary expenses of administration, should be paid out of said estate. There is no evidence in the record of creditor's claims, other than the claim of $9.00 herein mentioned. If other claims are presented they should be determined by the district court, taking into consideration the question of laches, as well as any other questions affecting their validity.

Appellant refers also in his petition to the measure of damages, and states in his brief that "it is elementary that the proper measure of damages in such cases is the reasonable rental value of the land during the period of its possession, and not the income actually received by defendant in farming operations."

Counsel's attention is called to the fact that there is no statement in the opinion to the effect that this court held that the proper measure of damages in the case at bar was the "income actually received by defendant in farming operations." This court held, and reiterates, in order to avoid any possible misunderstanding, that the defendant is chargeable with the reasonable rental value of the land during the period of his possession.

The other questions raised in the petition for rehearing were fully covered, we believe, in the opinion.

The petition for rehearing is denied.

FRICK, WEBER, GIDEON, and THURMAN, JJ., concur.