DAVID MONASTES, GUARDIAN, APPELLANT, *v.* JOHN
        CATLIN, RESPONDENT.

JURISDICTION—COUNTY COURTS.—The county courts in the exercise of judi-
    cial powers in the appointment of guardians of the persons and estates
    of minors and insane persons, are courts of general and superior juris-
    diction.

IDEM.—The appointment of guardians for minors and insane persons is juris-
    diction pertaining to probate courts within the meaning of section 12 of
    article VII of the constitution.

APPEAL from Columbia County.   The facts are stated in
the opinion of the court.

*J. C. Moreland and T. A. McBride,* for appellant.

*B. Rillen,* for respondent.

By the Court, WATSON, J.:

This action is brought by the appellant, David Mo-
nastes, guardian of the estate of Peggy McLane, a per-
son of unsound mind, against John Catlin, the respond-
ent, to recover the possession of a tract of land situ-
ated in Columbia county. It is admitted that before
the guardian's sale sought to be proven by defendant,
Peggy McLane was the owner in her own right in fee-
simple of the tract of land in dispute, and that unless the
order of the county court for Columbia county, which we
are about to examine, was valid and sufficient to constitute
C. A. Bradbury her guardian, the subsequent proceedings
including the guardian's deed through which the defendant
claims title, are void, and should not have been admitted
in evidence by the court below; and that the judgment
must be reversed.   On the other hand, it is admitted by
appellant that if the order is valid, the subsequent proceed-
ings were sufficiently regular, and that there was no error
in their admission in evidence by the court.   The following
is a copy of the order in question:

"John West, agent for Peggy McLane, sole heir at law
of John McLane, deceased, late of this county, came into
court and presented his petition, praying that a guardian
may be appointed for the said Peggy McLane, and after an

examination of the said Peggy McLane, and after a full hearing of the matter, finds that she is of unsound mind, and wholly incapable of managing her own business, or of nominating her own guardian. Therefore, it is ordered that Clement A. Bradbury be and he is hereby appointed guardian for the said Peggy McLane, and authorized and empowered to have the care and custody of his said ward, and the management of all of her property and estate; and that he execute a bond as such guardian in the sum of one thousand dollars; and the said Bradbury having executed and filed his bond, which is hereby approved by the court, it is further ordered that letters of guardianship be issued to him."

The above order was made on the sixth day of February, 1860. No proof was made or offered at the trial to show that any notice was ever served upon Peggy McLane. Whether the order is valid or not depends upon the decision of the question, whether or not the county court of Columbia county was, on the sixth day of February, 1860, in the exercise of its authority to appoint guardians for insane persons, a court of general jurisdiction. If it was a court of limited jurisdiction, its jurisdiction over the person of Peggy McLane not appearing on the face of the order, and not having been shown by proof *aliunde*, its proceeding was void. On the other hand, if it was a court of general jurisdiction, its jurisdiction is presumed, and its record "imports absolute verity, and cannot therefore be collaterally impeached from without," (*Hahn* v. *Kelly*, 34 Cal. 402) and "when the record is silent as to what was done, it will be presumed that what ought to have been done was not only done, but rightly done." (Id.) We decided in the case of *Tustin* v. *Gaunt*, 4 Or. 305, after a full examination of the question, that "county courts in the exercise of judicial powers," in probate business, "should be regarded as courts of general and superior jurisdiction, and that whenever their proceedings and judgments come in question collaterally, they are entitled to all the legal presumptions pertaining to the records of courts of superior jurisdiction."

We based our decision in that case upon section 1 of article VII., of the constitution of Oregon, which provides "that the judicial power of the state shall be vested in a supreme court, circuit courts, and county courts, which shall be courts of record having general jurisdiction to be defined, limited, and regulated by law, in accordance with this constitution. Justices of the peace may also be invested with limited judicial powers." And upon section 12 of article 7, which provides that "the county court shall have the jurisdiction pertaining to probate courts and boards of county commissioners," etc. In that case we reviewed the cases of *Thompson* v. *Multnomah County*, 2 Or. 37; *State of Oregon* v. *Officer*, 4 Or. 180, and *Johns* v. *Marion County*, 4 Or. 46, and decided that the principle denounced in those cases that the county court is a tribunal of inferior and limited jurisdiction, should be confined to the class of cases "in which the county court was engaged as a board of county commissioners in the laying out of county roads, which was purely county business as contradistinguished from probate business," and "that the court in the use of the language above referred to only intended to be understood as holding that these courts were courts of inferior and limited jurisdiction, when exercising judicial powers in the particular class of cases then under consideration."

We think that the principles announced in *Tustin* v. *Gaunt* are applicable to and decisive of this case. The constitution, in clear and positive terms, makes the county courts "courts of record, having general jurisdiction." There is but little force in the argument that their jurisdiction over the persons and estates of persons of unsound mind is conferred upon them by express statute. The jurisdiction of all of the courts of the state is conferred upon them, and their very existence is derived either from the organic or statute law.

Section 1 of article VII. of the constitution, after providing "that they shall be courts of record having general jurisdiction," adds the words "to be defined, limited and regulated by law in accordance with this constitution." We think

that in the exercise of all jurisdiction conferred upon them by laws in accordance with the constitution, except in the class of cases where they act as boards of county commissioners, they are by the plain words of the constitution courts of superior and general jurisdiction.

In the argument before us, the question has been argued whether or not the jurisdiction of the county courts in appointing guardians for persons of unsound mind is "jurisdiction pertaining to probate courts" within the meaning of that phrase as used in section 12 of article VII. of the constitution. The phrase has no legal definition. Courts of probate had no existence at common law. Those courts have been created, and their duties and jurisdiction defined by law in most if not all of the states of the union. In the majority of the states, at the time of the adoption of the constitution of this state, the authority to appoint guardians of the persons and estates of insane persons was vested in the probate courts. Under the provisional government and territorial government of Oregon up to the time of the adoption of the constitution, the appointment of guardians for minors and for insane persons was a part of the jurisdiction pertaining to probate courts.

We think the framers of the constitution of this state so understood and used that language in section 12 of article VII., and that under the constitution of this state, the county courts exercising judicial powers in the appointment of guardians for minors and insane persons are courts of general and superior jurisdiction.

It follows from this opinion that there is no error in the proceedings of the court below, and the judgment is affirmed.