## Case No. 60.
### ADAMS v. LEWIS.

[5 Sawy. 229;[1] 10 Chi. Leg. News, 403.]

Circuit Court, D. Oregon.  Aug. 28, 1878.

#### COURTS—PROBATE JURISDICTION.

1. In ascertaining the jurisdiction "pertaining to probate courts," under section 12, art. 7, of the constitution of Oregon, it is proper and necessary to consider what matters pertained to such jurisdiction under the laws of the territory at and before the adoption of the constitution, and it appearing that by such laws the probate courts of the territory had power to authorize and require an administrator to specifically perform a contract of his intestate for the sale and conveyance of real estate, such a matter is presumed to be within the jurisdiction of the county court sitting as a court of probate under the constitution.

2. The power of the legislature over the succession and conveyance of lands being unlimited, it may provide that a court of probate shall have jurisdiction to require an administrator to convey land in pursuance of the contract of his intestate.

[At law. Motion for new trial. Denied.]

This was a motion for a new trial in an action to recover the possession of the south half of lot 1, in block 16, in the city of Portland. The trial was had before the district judge and a jury, and resulted in a verdict for the defendant. The defendant claimed under a deed made by the administrator of D. H. Lownsdale, the donee of the United States, and the immediate ancestor of the plaintiff's grantors, executed in pursuance of an order of the county court of Multnomah county, sitting as a court of probate, in February, 1863. Upon the trial, the record of the county court and the administrator's deed, being offered in evidence by the defendant, [it] was objected to by plaintiff on the ground that the court had no jurisdiction of the subject-matter, because chapter 7 of the act of December 14, 1853, respecting executors, etc., under which the order and deed purport to have been made, was invalid from the beginning as being unauthorized by section 9 of the organic act of August 14, 1848, (9 Stat. 326,) or had become inoperative by the adoption of the constitution. The district judge overruled the objection, and admitted the evidence, saying: "The determination of this question hinges, I suppose, upon the construction to

[1][Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

be given to section 12, of article 7, of the constitution of the state of Oregon, which reads as follows: 'The county court shall have the jurisdiction pertaining to probate courts and boards of county commissioners, and such other powers and duties, and such civil jurisdiction, not exceeding the amount of value of five hundred dollars, and such criminal jurisdiction, not extending to death or imprisonment in the penitentiary, as may be prescribed by law.' In my judgment, the construction of this section, suggested by counsel for plaintiff, is correct; that is to say, the words, 'as may be provided by law,' do not relate to the grant of jurisdiction pertaining to probate courts and boards of county commissioners; that these are granted absolutely, and that in addition thereto, 'such other powers and duties,' " such civil jurisdiction not being defined, except that the value shall not be over five hundred dollars, and such criminal jurisdiction not being defined, except that it shall not extend to death or imprisonment in the penitentiary, as may be prescribed by law; but the two subjects, jurisdiction pertaining to probate courts and boards of county commissioners, are granted absolutely. Of course, that does not take away the power of the legislature over the subject of probate proceedings, and proceedings before boards of county commissioners, but it does not limit its power probably in this respect, so that it cannot transfer this jurisdiction or diminish it, cannot take it away, but it certainly has power to regulate the exercise of it. The legislative power extends to all rightful subjects of legislation. The legislature, then, may regulate the exercise of this jurisdiction pertaining to probate courts and boards of county commissioners, in county courts, and it may be that in the regulation of it, may suppress, so to speak, or leave in abeyance, for the time being, the exercise of some power which probate courts may have exercised heretofore.

Then the question returns, what is "the jurisdiction pertaining to probate courts?" By section 7 of article 18 of the constitution it is provided that all laws in force in the territory of Oregon when this constitution takes effect, and consistent therewith, shall continue in force until altered or repealed. So that the statute of December 14, 1853, as it was passed before this constitution was adopted, was one of the laws of the territory of Oregon, continued in force by it, if not inconsistent therewith. If it is inconsistent with this constitution, why of course the constitution displaces it, and it is no longer a law, whatever it may have been before. It may be admitted, then, that the question of what is the jurisdiction pertaining to probate courts includes this question as well as the other, because if the jurisdiction provided for in chapter 7 of the act of December 14, 1853, is part of the jurisdiction pertaining to probate courts, then the

constitution is not inconsistent with that law, but consistent with it.

As counsel for plaintiff has well said, it is a pretty difficult question definitely to decide, what is a matter properly pertaining to probate jurisdiction in the United States. It must be answered, I think, in each state separately and somewhat historically. There is a kind of tradition that runs along with the various changes of government by means of which the phrases and terms of the con- stitutions and laws of one era are interpreted and explained according to the sense in which they have been used in another, or prior one. The rule is that unless the con- trary appears, such phrases and terms are supposed to be used in the latter time in that sense in which they were used afore- time. That is what I understand to be the historical mode of determining what the phrase "probate jurisdiction," as used in the constitution, includes. We must ascertain the sense in which it was used in this state at the time of the formation and adoption of the constitution, and to do this it is only necessary to inquire what jurisdiction did probate courts have, at that time, in this state, as a matter of fact?

At common law, of course, there was no such probate jurisdiction. The power to grant letters testamentary where the de- ceased left a will, and to grant letters of ad- ministration where he died intestate, was vested in the ordinary, the bishop of the diocese. If the bishop did not exercise it in person it was done by the surrogate, a substitute, who stood in his place. But this jurisdiction only pertained to the granting of letters of administration, or testamentary. Originally, I believe, the personalty was given by the king as parens patriae to the ordinary, in trust, and was applied in saying masses for the benefit of the soul of the de- ceased, or to some other pious or charitable use. At common law the real estate was not affected in any way by the proceedings in the ecclesiastical courts. The proof of wills and granting of letters testamentary, or of administration, did not affect the land in any way, and taking that standard of what may be called probate jurisdiction, of course this is not a probate matter or anything like it. But the law has changed a great deal since that time, in regard to this matter, particularly in the United States.

I think this word "probate," "judge of pro- bates" and "probate matters," comes to us from Massachusetts—comes from New Eng- land—that is my impression about it. And I think, there, from the beginning, very much larger power was given to the persons exer- cising that jurisdiction, than belonged to the ordinary, and particularly in the matter of dealing with the land of the deceased. It is very evident, according to the case read from [Luchterhand v. Sears,] 108 Mass. 552, that there was a statute there providing for specific performance of contracts for the con-

veyance of land, by order of the judge of probate. I cannot say what the form or manner of proceeding was, but that was the end to be attained.

Chapter 7 of the act of December 14, 1853, (Code [Statutes] 1855, p. 338,) is taken from the act upon the same subject, passed Sep- tember 29, 1853, [1849,] (Code [Gen. Laws] 1851, p. 133,) with the omission of some very wholesome provisions concerning no- tice to the administrator, and the rights of infants, absentees, etc. [The court then read the provisions of the act of 1849, relat- ing to the authority of the probate court to order a specific performance by the adminis- trator of a written contract by the deceased to convey land, and compared them with those of 1853.]

Section 6 of the act of September 3, 1849, "An act to establish a probate court, and de- fine its powers and duties," (Code 1851, p. 211,) is the prototype of section 6 of the same title, passed December 15, 1853, (Code 1855, p. 312, [339,]) relating to the jurisdiction of the probate judge. The statutes of 1849 are the earliest legislation upon the subject of judges or courts of probate, and their juris- diction and powers in this state. The origin of the probate jurisdiction, so far as Oregon is concerned, is found in these statutes of 1849 and 1853, the latter of which are sub- stantial copies of the former.

At the formation and adoption of the con- stitution, what then was understood from the prior and existing legislation of the coun- try to be the "jurisdiction pertaining to pro- bate courts?" Did it include the power to order specific performance of a contract re- lating to land by the administrator? Cer- tainly it did. There does not seem to have been any doubt or dispute about it. This power was always included in the powers of the judges of probate.

But it is said by counsel for plaintiff that this power could not have been conferred upon the probate court by the territorial legislature, because it was not a power per- taining to probate courts, and that therefore the statute never was valid.

Section 9 of the organic act of August 14, 1878, [1848,] (9 Stat. 326,) vested the judicial power of the territory in supreme, district, and "probate courts," with jurisdiction as limited by law. Now, if the power to order an administrator to convey land in pursuance of the contract of his intestate, could not be conferred upon the probate court of the ter- ritory, because a matter not pertaining to a probate court, then the suggestion has force. But that only brings the inquiry around to where it was before, what are probate pow- ers or matters?

Originally a debt due from the deceased could not be paid out of his land, because the administrator or executor had no power over the realty. If it was a simple contract debt, and the personal property was not suffi- cient to pay it, it was lost; but if it was

evidenced by a writing obligatory, an instrument under seal, then the doctrine came to be that it followed the land so far that you could sue the heir or devisee, and enforce payment to the value of the land received from the devisor or ancestor. Afterwards, in this country, the matter of making such payments, and subjecting the land to the debts of the deceased, came to be a recognized head of probate jurisdiction. That fact seems to be admitted by the plaintiff's counsel, that the probate court has authority to order the sale of lands to pay the debts of the deceased. But at one time that was not so. Now, is there any real distinction in principle between that and ordering the administrator to specifically perform any contract in relation to land?

A man dies under obligation to pay a debt to A. B., and has no personal property out of which the debt may be satisfied, and the law provides that the probate court may order the administrator to sell the lands of the deceased, and pay the debt with the proceeds, and thus take away the title of the heir. But suppose the deceased was under a valid contract to convey the same land to A. B. If the contract is not performed, the estate is liable for the loss which A. B. may sustain by reason of the non-performance. To prevent circuity of action, and settle the matter directly and simply, the court is authorized to direct a specific performance of the contract by the administrator. The deed made by the administrator conveys the title, which would otherwise have been conveyed by him to satisfy the debt, in damages for non-performance.

It seems to me there is no difference in principle between these two proceedings. It may be said that vesting jurisdiction of this kind in unlearned county courts, to be exercised without process or notice to the parties interested except the publication of a notice in a newspaper, may prove a convenient method of robbing infant heirs of their lands. So I am inclined to think, and for that reason, in preparing the Code of 1862, I intentionally omitted to provide for the specific performance of contracts relating to land in the county courts, but left the power to be exercised by the circuit court, where it properly belongs, as a recognized head of equity jurisdiction. But it is difficult to see on what ground you can limit the power of the legislature in this respect. Its power over the succession and conveyance of land is unlimited. Suppose it should provide that the administrator should perform the contracts of the intestate, in relation to lands, without the interference of any court, would not a conveyance in such a case, by the administrator, at least in pursuance of a valid contract, pass the title as against the heir? I can conceive of no reason why it would not. Then, if the law should provide that the administrator should

only act upon the order of the county or any other court, it is difficult to see how the conveyance would be impaired by this additional precaution in favor of the heir. It is only by virtue of the law that the real property of a deceased person descends to certain persons called his heirs. I suppose the legislature might provide that the property should vest in an administrator absolutely; that it should belong to him with the same power of use and alienation as the deceased had until the liabilities and obligations of the deceased were satisfied and complied with.

In my judgment, then, the making of the order at the term of the county court of March, 1863, in pursuance of which the deed from Lownsdale, administrator, to Simon, was executed, was made by the county court of Multnomah county in the exercise of "the jurisdiction pertaining to probate courts" as that phrase was used and understood in this state when the constitution was framed and adopted. This being so, the provisions of the act of 1853, under which these proceedings took place in 1863, were then in force, because being consistent with the constitution they were adopted and continued in force by it until repealed by the Code of 1862, which did not go into operation until June 1, 1863. Even if the territorial legislature had not the power, strictly speaking, to confer this authority on the probate court under the organic act, still, the act having been passed by the territorial legislature and treated and considered as a valid law until the formation of the constitution, I am of the opinion that it was adopted by that instrument and became a law of the state from the time the constitution went into operation.

The fact that the grantors of the plaintiff, the then infant heirs of D. H. Lownsdale, had only constructive notice of the proceeding under which Simon, the grantor of the defendant, obtained his deed, may be a good reason why the order should be open to attack, collaterally, for fraud or mistake. But at all events the order and deed are, prima facie, valid, and further than that it is not necessary to decide.

There was evidence given by the defendant to show that she, and those under whom she claimed, had been in the open and adverse possession of the premises since 1848.

The court instructed the jury that the defendant was the owner of the premises by virtue of the conveyance from Lownsdale's administrator and the subsequent mesne conveyances, but that the possession of D. Simon, under whom the defendant claimed, was not adverse to the title of Lownsdale, as was shown by his application under oath for a conveyance of that title at the February term, 1863, of the county court, citing Adams v. Burke, [Case No. 49;] and that therefore their general verdict must be for the defendant, with a special finding

that the defendant had not by herself nor those under whom she claims been in the continuous possession of the premises adversely to the plaintiff and those under whom he claims for more than twenty years before the commencement of this action. Verdict accordingly.

Benton Killin and H. Y. Thompson, for plaintiff.

William H. Effinger and W. F. Trimble, for defendant.

Before FIELD, Circuit Justice, and DEADY, District Judge.

FIELD, Circuit Justice. The ruling of the district judge, both upon the admission of the evidence and in the instruction given to the jury, was correct, and for the reasons given by him. The motion for a new trial is denied.