Argued December 5, 1945; affirmed January 29, 1946

In Re Stroman's Estate
INDUSTRIAL HOSPITAL ASS'N. *v.* EGE
(165 P. (2d) 576)

*James G. Smith,* of Portland (Maguire, Shields & Morrison, of Portland, on the brief), for petitioner-appellant.

*Edward J. Clark,* of Portland (Tanner & Clark, of Portland, on the brief), for guardian-respondent.

BRAND, J.

The petition alleges that the Hospital Association entered into a contract with Stebco Inc., a corporation, whereby it agreed to provide medical and hospital services and supplies to the employees of Stebco. The contract provided generally that, if an employee of Stebco should be injured by a third party, the Hospital Association should be subrogated to the rights of the employee against the third party to the extent of the disbursements expended by it for the benefit of the employee under the contract.

Jerry Stroman, a minor and an employee of Stebco, was injured by a train operated by the Spokane, Portland and Seattle Railway Company and thereafter demanded that the Hospital Association bear his medical and hospital expenses as provided in the contract. The Hospital Association in performance of its contract incurred expense. Thereafter the minor, through his father as his duly appointed guardian ad litem, instituted an action in the Circuit Court of the State of Oregon for Multnomah County against the railway company to recover for injuries and reasonable expense of the medical and hospital services and supplies which had been borne by the Hospital Association pursuant to its contract. The minor recovered judgment in the sum of $7,500, which was satisfied by the payment of said sum into court. Thereafter the funds were paid into the guardianship estate of Jerry C. Stroman, "which guardianship estate was created

to receive and administer upon said funds.'' Edwin Ege is the guardian.

The Hospital Association demanded payment of the minor and of his guardian, and payment was refused by both. As subrogee it now seeks from the probate court an order directing payment of its claim.

We quote from the order of the trial court sustaining the guardian's demurrer:

> "* * * And it duly appearing that this court, as a court of probate jurisdiction having jurisdiction of guardianship estates, has no jurisdiction of the subject of said petition, but that said matter asserted in the petition must be asserted in a court of general jurisdiction where the ward may be protected in his right to a jury trial, and the court being fully advised, * * * the demurrer * * * is * * * sustained.''

■ The form of the order on the demurrer indicates an adoption by the court of the guardian's contention that the petitioner's claim could only be asserted in a court of general jurisdiction (meaning a circuit court as distinguished from a probate court) and by an action at law with the right of jury trial. It is undoubtedly true that the ordinary claim for money owing from a minor to his creditor is triable in a circuit court of general jurisdiction as an action at law with the right to trial by jury. But it does not necessarily follow that claims of equitable cognizance may not arise against a minor which would be triable in a court of general jurisdiction sitting in equity without any right to jury trial. The petitioner's brief indicates that it rests its case, in part at least, on a theory that the minor has recovered from the railroad company money as damages and that a portion thereof in the guardianship estate is held as a trust fund for the petitioner

as the subrogee for whose benefit the minor collected and owns the money now in the guardianship estate.

We express no opinion as to whether a suit could be brought in a court of equity upon this theory. The matter is mentioned merely to indicate that the decision of the trial judge to the effect that the court sitting in probate was without jurisdiction is not necessarily based upon the minor's right to a jury trial in a law action.

■ The proceeding was brought in the Circuit Court of Multnomah County, a court having the general jurisdiction and powers which are vested in circuit courts generally but in which court also rests all jurisdiction formerly vested in the probate courts of that county. Laws of 1919, Chapter 59, now variously distributed in O. C. L. A. §§ 13-206 to 13-208, and §§ 93-232 to 93-234, 93-310.

As this court has said:

"The jurisdiction of the Circuit Court was not in any respect lessened or restricted by the enactment mentioned. Its powers were increased by the addition of probate jurisdiction." In re Will of Pittock, 102 Or. 159, 172, 199 P. 633, 17 A. L. R. 218.

See also *Bartlett v. Bartlett,* (1944) 175 Or. 215, 152 P. (2d) 402; *In re Norman's Estate,* 159 Or. 197, 207, 78 P. (2d) 346; *Re Faling Estates,* 113 Or. 6, 15, 16, 228 P. 821; *Re Pittock's Estate* (Leadbetter v. Price), 102 Or. 47, 201 P. 428. However, the broad jurisdiction of such circuit court over subject matter and remedies does not dispense with the necessity of acquiring jurisdiction over the person.

■■ Assuming for the moment that the substance of the allegations in the petition did set forth a cause of action either at law or in equity but did not set forth

any claim within probate jurisdiction as such, it is clear that the petitioner would have had no right to proceed in the manner which he adopted; and this is true regardless of the broad powers of the circuit court in which the proceeding was commenced, for the following reasons: (1) Petitioner makes no claim that the proceeding is at law or in equity. Its argument is that a court of probate has jurisdiction of the subject of the petition and that this is not a "civil case" within the meaning of the Oregon Constitution, Article I, § 17. (2) The case was filed in the probate department where it should not be unless it was within the jurisdiction pertaining to probate courts. (3) The procedure employed was not appropriate to a plenary action or suit in a circuit court. The case is entitled "In the Matter of the Guardianship of the Estate of Jerry C. Stroman, a Minor." It is a petition for an order directing the guardian to pay out money. There is no evidence of the issuance of any process. The only acknowledgment of service of the petition and the only appearance is by "Edward J. Clark, of attorneys for guardian." The obstacle which alone would prevent the circuit court from entertaining the proceeding as a plenary action or suit is found in the fact that the title to the fund that comprises the guardianship estate is in the minor and not the guardian. 39 C. J. S. 116, Guardian and Ward, § 75. The ward who owns the money has never been served. Therefore, treating the proceeding as a plenary suit or action in a circuit court of general jurisdiction, if such could be done, it would be necessary to dismiss the cause for want of jurisdiction over the real party in interest.

■ The only remaining theory on which jurisdiction could be based is that the claim was one within the jurisdiction pertaining to probate courts as such and

that the procedure in the probate court was adequate to establish jurisdiction therein. This is the issue presented by the brief of petitioner; and in its determination the fact that the proceeding was in Multnomah County, where probate matters are tried by a circuit court, becomes immaterial. The issue would be the same if it had arisen concerning the jurisdiction of a county or probate court prior to 1919.

The question at issue is whether the probate court had jurisdiction to adjudicate a contested claim owing a third party and presented by petition in the guardianship estate, the guardian only appearing and no service having been had upon the ward.

██ After February 14, 1859, (the effective date of the Constitution of 1857), the county court was a constitutional court of record "having general jurisdiction, to be defined, limited and regulated by law" in accordance with the constitution. To it was given "jurisdiction pertaining to probate courts * * * and such other powers and duties * * * as may be prescribed by law." Constitution of 1857, Article VII, §§ 1 and 12. The jurisdictional boundaries of the county court sitting in probate were defined and limited by the foregoing constitutional provisions. "Jurisdiction pertaining to probate courts" was granted absolutely. It could not be taken away (*State v. McDonald*, 55 Or. 419, 430), nor apparently could it be enlarged. The words, "such other powers and duties * * * as may be prescribed by law," referred to the investiture of limited civil and criminal jurisdiction in county courts.

"By the constitution county courts are vested with the jurisdiction pertaining to courts of probate, and the legislature is authorized to confer upon them limited civil and criminal jurisdiction. The two jurisdictions are, however, as separate

and distinct as if conferred upon separate tribunals." *Morgan's Estate,* 46 Or. 233, 236, 77 P. 608, 78 P. 1029. And see *Adams v. Lewis,* 5 Sawy. 229, infra.

■ County courts when acting in probate matters were courts of general jurisdiction entitled to all the presumptions as such (*Anderson v. Palmer,* 111 Or. 137, 144, 224 P. 629), but there was no presumption that any particular matter was one pertaining to probate courts.

" 'No court, no matter how general its jurisdiction may be, which proceeds without jurisdiction in the particular case, can make a valid record, or confer any right or title.' " *Wright and Jones v. Edwards,* 10 Or. 298, 302.

■ Although courts of general jurisdiction within their field, it is generally held that

"Probate courts have no common-law jurisdiction, but the nature, extent, and exercise of their jurisdiction depend on the terms of the constitutional or statutory grant. They cannot exercise any powers other than those which have been expressly conferred on them, or which are necessarily implied from those expressly conferred; and their powers are not to be extended by construction or by unnecessary implication." 21 C. J. S. 538, Courts, § 301.

In an early case this court said: "The nature and extent of their jurisdiction depend upon the statute, and they possess no other or greater powers than so conferred." *Johnston v. Shofner,* 23 Or. 111, 118, 31 P. 256. The principle was reaffirmed in *In re Anderson's Estate,* 157 Or. 363, 378, 71 P. (2d) 1013. And see *Smith v. Westerfield,* 88 Cal. 374, 26 P. 206; *Kingsbury v. Powers,* 131 Ill. 182, 22 N. E. 479; *Morgan v. Hoyt,*

69 Ill. 489; *Harter v. Miller*, 67 Kan. 468, 73 P. 74; *George v. Dawson*, 18 Mo. 407; *Cooper v. Wallace*, 55 N. J. Eq. 192, 36 Atl. 575.

■ We must now seek in the decisions, the judicial test by which the meaning of the phrase "jurisdiction pertaining to probate courts" is to be ascertained. The case of *Monastes v. Catlin*, 6 Or. 119, involved the validity of an order of the county court appointing a guardian. The question was whether such an order was within the constitutional "jurisdiction pertaining to probate courts." The court adopted an historical test.

"The phrase has no legal definition. Courts of probate had no existence at common law. Those courts have been created, and their duties and jurisdiction defined by law in most if not all of the states of the union. In the majority of the states, at the time of the adoption of the constitution of this state, the authority to appoint guardians of the persons and estates of insane persons was vested in the probate courts. Under the provisional government and territorial government of Oregon up to the time of the adoption of the constitution, the appointment of guardians for minors and for insane persons was a part of the jurisdiction pertaining to probate courts.

"We think the framers of the constitution of this state so understood and used that language in section 12 of article VII, and that under the constitution of this state, the county courts exercising judicial powers in the appointment of guardians for minors and insane persons are courts of general and superior jurisdiction." *Monastes v. Catlin*, 6 Or. 119.

Subsequent decisions have established that the scope of probate jurisdiction under the state constitution of 1857 is to be determined by ascertaining the

jurisdiction of the probate courts under the territorial government at the time of the adoption of the constitution.

*Adams v. Lewis,* 5 Sawy. 229 (1878) (U. S. Circuit Court, District of Oregon), is of special significance because tried in the United States District Court before Judge Deady, the compiler of the first Code under statehood and the draftsman of the Act of 1862 concerning the powers of county courts in the administration of estates. His opinion as district judge was adopted as the opinion of the Circuit Court on appeal. The Territorial Act of December 14, 1853, Chapter VII, (Statutes of Oregon 1855, p. 367), empowered the probate court to direct administrators to specifically perform contracts of decedents for the conveyance of land. Article XVIII, Section 7, of the State Constitution of 1857 provided that "all laws in force in the Territory of Oregon when this constitution takes effect, and consistent therewith, shall continue in force until altered or repealed." Judge Deady held that Chapter VII was still in force if, but only if, it was consistent with the constitutional provision that probate courts under statehood shall have "the jurisdiction pertaining to probate courts." Judge Deady said:

"* * * It is a pretty difficult question definitely to decide, what is a matter properly pertaining to probate jurisdiction in the United States. It must be answered, I think, in each state separately and somewhat historically. * * * The rule is that unless the contrary appears, such phrases and terms are supposed to be used in the latter time in that sense in which they were used aforetime.

"That is what I understand to be the historical mode of determining what the phrase probate jurisdiction, as used in the constitution, includes. We must ascertain the sense in which it was used in this state at the time of the formation and adoption of

the constitution, and to do this it is only necessary to inquire what jurisdiction did probate courts have, at that time, in this state, as a matter of fact." *Adams v. Lewis,* supra.

Finding that under territorial laws the jurisdiction pertaining to probate courts included, by express provision, the power to direct specific performance in such cases, the court held that Chapter VII remained valid after statehood, being a matter "pertaining to probate courts" and therefore being consistent with the constitutional provision of 1857. (The provisions of Chapter VII of the Laws of 1853 were omitted by Judge Deady in preparing the Probate Code of 1862.)

Again this court said:

"In determining what is jurisdiction pertaining to probate courts under the constitution, it is necessary to consider what jurisdiction probate courts had at the time the constitution was framed and adopted, as it is presumed the phrase 'pertaining to probate courts' was used in that instrument in the sense in which it was accepted in Oregon at that time." (Citing *Adams v. Lewis,* supra.) *State v. McDonald,* supra.

The same historical test was applied in *Ex Parte Emma,* 48 F. 211; *Morgan's Estate,* supra; and *Cole v. Marvin,* 98 Or. 175, 177, 193 P. 828.

Applying the historical test, we look to the Organic Act establishing the Territory of Oregon and to the statutes thereunder which were in effect at the time of the adoption of the Oregon constitution in order to determine whether a claim such as that of the petitioner in the case at bar is part of the "jurisdiction pertaining to probate courts" within the meaning of the constitution of 1857.

The jurisdiction of the probate court was defined by Section 6 of the Territorial Act of December 15, 1853. Omitting the provisions relating to the estates of deceased persons and quoting only the portion relating to guardianship, that section provided:

"The judge of probate * * * shall have and possess the following powers: original jurisdiction in all cases relating to * * * the appointing or displacing guardians over orphan minors, spendthrifts and persons of unsound minds, and the binding orphan minors as apprentices: the settlement and allowance of all accounts against estates, * * * of * * * guardians; * * * the right to * * * guardianship, and respecting duties and accounts of * * * guardians * * *." Act of Dec. 15, 1853, Probate Court, Chap. I, § 6, Statutes of Oregon 1855, p. 339.

The same section grants to the probate judges, "the hearing and determining all suits and other proceedings instituted against *executors and administrators, upon any demand against the estate of their testator or intestate.*" Act of Dec. 15, 1853, Probate Court, Chap. I, § 6, Statutes of Oregon 1855, p. 339. (Italics ours.)

Here the legislature attempted in a single section to define the powers of the probate court as to estates of decedents and also as to guardianship matters. The inclusion of express authority to adjudicate claims against the former and the exclusion of any such authority as to the latter is highly significant. The maxim expressio unius est exclusio alterius applies with peculiar force. Section 10 of the Act of December 15, 1853, provides that the probate judge "shall have jurisdiction in all matters relating to the estates of such persons as are under guardianship; and the settlement of the same," but it contains no provision authorizing the trial of creditors' claims.

The same difference as to the powers of the probate court to adjudicate claims against decedents' estates on the one hand, and claims against guardianship estates on the other, appears in the territorial statutes which separately deal with the respective matters. Section 7 of Chapter IV of the Act of December 14, 1853, respecting executors and administrators, provides:

"Sec. 7. When a claim is rejected by either the executor, administrator, or the probate judge, the holder shall bring suit *in the proper court,* against the executor or administrator * * *." Act of Dec. 14, 1853, Of Claims Against the Estate, Chap. IV, § 7, Statutes of Oregon 1855, p. 357. (Italics ours.)

That provision, coupled with the quoted provisions of Section 6 of the Act of December 15, 1853, was held in Morgan's Estate, supra, to have vested in the probate court jurisdiction to determine contested claims against an estate which had been presented to and rejected by the administrator.

The Territorial Act concerning guardians and wards was passed December 15, 1853. Laws of 1855, Chapter II, § 4, page 391, provides that "every guardian so appointed shall have the custody and tuition of the minor, and the care and management of his estate."

Section 16 of that act is as follows:

"Sec. 16. Every guardian appointed under the provisions of this chapter, shall pay all just debts due from his ward, out of his personal estate, if sufficient, and if not, out of his real estate, upon obtaining a license for the sale thereof, as provided by law; he shall also settle all accounts of the ward, and demand, sue for and receive all debts

due to him, or may, with the approbation of the judge of probate, compound for the same, and give a discharge to the debtor, upon receiving a fair and just dividend of his estate and effects; and he shall appear for and represent his ward in all legal suits and proceedings, unless where another person is appointed for that purpose, as guardian or next friend." Act of Dec. 15, 1853, Of Guardians and Wards, Chap. II, § 16, Statutes of Oregon 1855, p. 391.

Section 16 remains unchanged to this day and appears as O. C. L. A. § 22-122. It contains no provision which authorizes suit in the "proper" court against guardianship estates, similar to that found in the chapter on executors and administrators.

■ The petitioner relies strongly upon the provisions of O. C. L. A. § 22-122, supra. That provision was, as we have said, a re-enactment without change of the territorial statute of 1853. It is, therefore, relevant in applying the historical test as to probate jurisdiction. The internal evidence conclusively establishes that O. C. L. A. § 22-122 was taken from Sections 15 and 16, Chapter 115, of the Laws of California entitle l "An Act to Provide for the Appontment and Prescribing the Duties of Guardians," passed April 19, 1850. The construction placed upon the early California statute by its courts thus becomes persuasive as to the construction of the similar Territorial Law of 1853 and, therefore, is relevant as to the meaning of matters "pertaining to probate courts" under the Oregon Constitution of 1857.

The leading California case is *In Re Breslin's Estate*. In that case the plaintiff brought suit in the Superior Court of California sitting in probate to recover from the estate of an insane ward money due

for his care and treatment. The claimant proceeded as in probate matters by petition in the matter of the guardianship. It does not appear whether the ward was served. The guardian appeared and objected on the ground that the court sitting in probate had no jurisdiction of a disputed claim. The court said:

> "The superior court sitting in probate has no jurisdiction to hear and determine a disputed claim against the guardian or the estate. It can settle a guardian's account, and can allow or reject any item of expenditure which he had deemed a proper charge and had paid; but, when there is a claim against the estate which the guardian contests as invalid, the issue thus raised between the claimant and the guardian is the proper subject of a civil action, and can be legitimately brought before a court only by such action. There is no provision of our Code on the subject of guardian and ward which undertakes to give the probate court jurisdiction to determine contests between alleged debtors and creditors such as the one involved in this appeal. Indeed, there is no provision at all for the presentation of a claim to a guardian, as there is in the case of an administrator * * *."
> *In Re Breslin's Estate,* 135 Cal. 21, 66 P. 962 (1891).

The last pronouncement on the subject appears to be in *Schram v. Poole,* 97 F. 2d 566. In that case the receiver of an insolvent national bank sought to enforce a stockholder's liability against stock which was a part of the estate of a minor who was under guardianship. It was held that the laws of California controlled the decision. The court said:

> "In California, the guardian 'must pay the ward's just debts'. Probate Code, § 1501. A claim for such a debt need not be presented to the guardian, and if presented, need not be verified nor approved by the court before payment. Guardianship of Breslin, 135 Cal. 21, 22, 66 P. 962; Racouillat

v. Requena, 36 Cal. 651, 656; 13 Cal. Jur. 178, § 32.
'The superior court sitting in probate has no juris-
diction to hear and determine a disputed claim
against the guardian or the estate', but such a
claim 'is the proper subject of a civil action, and
can be legitimately brought before a court only by
such action'. Guardianship of Breslin, supra, page
22, 66 P. page 962. See, also, Swift v. Swift, 40
Cal. 456; Walters v. Superior Court, 129 Cal. App.
19, 18 P. 2d 343; 13 Cal. Jur. 189, § 41.

"Since such a proceeding as the one in question
is one not in rem but in personam (Commonwealth
Trust Co. v. Bradford, 297 U. S. 613, 619, 56 S. Ct.
600, 602, 80 L. Ed. 920), appellee contends that
the estate in his hands cannot be bound, unless the
minor is made a party. We believe that such is the
rule in California. See Emeric v. Alvarado, 64
Cal. 529, 593, 2 P. 418; Justice v. Ott, 87 Cal. 530,
25 P. 691; O'Shea v. Wilkinson, 95 Cal. 454, 456, 30
P. 588; Redmond v. Peterson, 102 Cal. 595, 598, 36
P. 923, 41 Am. St. Rep. 204; Loock v. Pioneer Title
Ins., etc., Co., 4 Cal. App. 2d 245, 40 P. 2d 526.
Compare Morgan v. Potter, 157 U. S. 195, 198, 15
S. Ct. 590, 39 L. Ed. 670. The reason for the rule
is that trustees, executors and administrators hold
title to the property, whereas guardians 'simply
stand in the position of protectors'. Fox v. Minor,
32 Cal. 111, 117, 91 Am. Dec. 566. The guardian
'was neither a necessary nor a proper party'. Red-
mond v. Peterson, supra, page 598, 36 P. page 924.''
*Schram v. Poole,* 97 F. (2d) 566, 571.

See also *O'Shea v. Wilkinson,* 95 Cal. 454, 30 P. 588
(1892); *Bush v. Lindsey,* 44 Cal. 121 (1872); *Swift v.
Swift,* 40 Cal. 456 (1871).

In *Smith v. Westerfield* the court said:
"The superior court, while sitting as a court
of probate, has only such powers as are given it
by statute, and such incidental powers as pertain

to all courts for the purpose of enabling them to exercise the jurisdiction which is conferred upon them. Although it is a court of general jurisdiction, yet in the exercise of these powers its jurisdiction is limited and special; and whenever its acts are shown to have been in excess of the power conferred upon it, or without the limits of this special jurisdiction, such acts are nugatory, and have no binding effect, even upon those who have invoked its authority, or submitted to its decision.'' *Smith v. Westerfield,* supra.

 Section 16, Chapter II, of the Territorial Act of December 15, 1853, now O. C. L. A. § 22-122, does not purport to deal directly with probate court jurisdiction, which is elsewhere defined, but only with the powers and duties of guardians. Duties therein specified cannot be construed as conferring jurisdiction on the probate court to adjudicate contested claims such as the one involved in the instant case. Our conclusion is fortified by the California rule as stated in the Breslin case, supra.

 The other section on which the petitioner relies is O. C. L. A. § 13-501. That section does not appear in the territorial laws. It was first enacted in 1862. It has, therefore, no relevancy as to the meaning of ''matters pertaining to probate courts'' as that phrase is used in the Constitution of 1857. That section provides that ''The county court has the exclusive jurisdiction. in the first instance, pertaining to a court of probate; that is: * * * * (3) To direct and control the conduct, and settle the accounts of executors, administrators and guardians; * * * (6) To order * * * disposal of the real and personal property of minors.'' That statute added nothing to the constitutional powers of probate courts as defined by the historical test. The powers specified in the statute were already in-

cluded within matters "pertaining to probate courts" under the constitution of 1857. While the 1910 amendment to Article VII of the constitution authorized legislative enlargement of probate jurisdiction, it did not of itself enlarge by construction the statutes which had been enacted prior thereto.

■ We do not question the authority of a guardian to pay the just debts due from the ward when they are uncontested. See *In Re Breslin's Estate*, supra. When paying such claims the guardian charges the estate with the amount of payment and credits himself as guardian in his accounting to the court; and, if his accounts are finally approved, he and his bondsmen are protected. It would be a different matter to hold that a probate judge, who in most of the counties of Oregon may still be a layman unlearned in the law, has jurisdiction to adjudicate controversies between parties who are normally entitled to plenary proceedings and who may have a constitutional right to jury trial.

■ Our conclusion is in harmony with the general law as set forth in the treatises and supported by many authorities.

"In the absence of constitutional or statutory provisions authorizing a probate court, or a court of general jurisdiction sitting in probate, to hear or allow claims against the guardian, as such, or against the estate of the ward, the court has no such power." 39 C. J. S. 182, Guardian and Ward, § 103.

And see 28 C. J. 1167, Guardian and Ward, § 284.

■■ Again it is said:

"Actions against Ward.—As a general rule, an action upon a liability of a ward must be maintained

against the ward, rather than against the guardian, although the guardian may properly be named as a party defendant. Thus, it has been held that an infant ward may be sued upon a contract for necessaries which the guardian has failed to provide, and there is authority to the effect that an action may, without a claim being first presented to the guardian, be maintained against an incompetent ward.'' (Citing The Home v. Selling, 91 Or. 428, 179 P. 261) 25 Am. Jur. 96, Guardian and Ward, § 153.

''So in general an action at law does not lie against the guardian personally to recover for necessaries furnished to the ward in the absence of any express contract or promise on the part of the guardian; such action will not lie on the theory of an implied promise or implied assumpsit. In other words, relief with respect to debts of, or necessaries furnished to, the ward, as to which the guardian has not obligated himself personally, must be sought in some appropriate proceeding other than a direct action to charge the guardian personally.'' 39 C. J. S. 307, Guardian and Ward, § 171.

''Where an infant has not been served with process, a judgment or decree against or affecting his interest is erroneous, and the appointment of a guardian ad litem, or an appearance or answer by such guardian, does not bring the infant before the court * * *.'' 27 Am. Jur. 857, Infants, § 138.

''An infant can neither acknowledge or waive the legal service of process upon him.'' Ibid. at 859, § 140.

■ This court has held that the strict provisions of the statutes concerning service upon infants must be complied with. *Harris v. Sargeant,* 37 Or. 41, 60 P. 608; *Cobb v. Klosterman,* 58 Or. 211, 114 P. 96.

■ Unless the claimant should present issues of equitable cognizance, the ward would be entitled not

only to personal service and plenary proceedings but also to trial by jury. Such right in a living infant who may be of suitable age to participate in his own defense is certainly as clear as that of an executor on claims against a decedent's estate. The right of the executor to a jury trial we have consistently upheld. *Johnston v. Shofner,* supra; *Hiller v. Smith,* 171 Or. 428, 137 P. (2d) 828; *In Re Patton's Estate,* 170 Or. 186, 132 P. (2d) 402; *In Re Stout's Estate,* 151 Or. 411, 50 P. (2d) 768, 101 A. L. R. 672; *Bannon v. Thompson,* 136 Or. 311, 298 P. 907; and *In Re McCormick's Estate,* 72 Or. 608, 143 P. 915, 144 P. 425.

*In Savage v. McCorkle,* Jane Murphy, as plaintiff, secured a decree in the circuit court against McCorkle, a minor, which decree established a charge against the lands of the minor for the support of the plaintiff. Savage, a stranger to the decree, expended money for the support of Jane Murphy and filed a petition in the probate court seeking an order directing the guardian of the minor to pay petitioner from the funds of the guardianship estate the amount of his claim. The Supreme Court held that Savage, being a stranger to the circuit court litigation, could claim no benefit under it. Savage then claimed under an order of the county court which had allowed his claim against the estate. The court said:

> "It was suggested on the argument that the allowance of their claims by the county judge of Marion County, gave them a *status* somewhat different from that which they would have occupied without it. This allowance by him was made under the decree [meaning the circuit court decree] already referred to, and the only legal sanction it has is such as was imparted to it by the decree. *There is no law conferring any such jurisdiction on the county judge,* and whatever effect might

have been given to its exercise between the parties to the decree, it is conceived that it could not be extended to the claims or demands of a person who was not a party to it.'' *Savage v. McCorkle,* 17 Or. 42, 49, 21 P. 444 (Italics ours.)

See also *Morgan v. Hoyt; Kingsbury v. Powers; Harter v. Miller; George v. Dawson; Cooper v. Wallace,* supra.

The petitioner's chief reliance is upon the case of *In Re Barker,* 83 Or. 702, 164 P. 382 (1917). The petitioners in that case had furnished necessaries to a spendthrift under guardianship. Upon rejection of their claim they filed a petition in the probate court for an order compelling the guardian to pay the indebtedness. The probate court denied the petition, and the case was appealed to the circuit court. A jury being waived, the case was tried by the court and judgment rendered in favor of the claimant. On appeal to this court, the only questions considered were, first, whether the goods sold to the spendthrift were necessaries; and, second, whether the court erred in entering judgment instead of merely approving the claim and sending it back to the probate court to be paid in due course of administration. There was no challenge to the jurisdiction of the court and no discussion of that issue in the opinion of this court. It is true, as the petitioner claims, that jurisdiction can never be waived. But since the jurisdictional question was not raised or considered, the case should not be deemed an authority on that issue.

In some respects the Barker case is distinguishable from the case at bar. In the statement of facts by Justice Burnett it is said: ''The judgment in fact entered was substantially that the plaintiffs have and recover *from the defendant Barker the sum* of $152.71

* * *." Barker was the spendthrift ward, and the above statement hints at least that Barker had been served in the case. The judgment recites: " * * * And *defendant appearing in person* by S. B. Stewart [the guardian] and by E. E. Coovert and Lynn B. Coovert, attorneys for said guardian, * * * ." This again indicates the personal appearance if not the service upon the ward. There are other irregularities in the procedure which throw doubt upon the value of the case as a precedent. The notice of appeal addressed to the claimant recites: "You are hereby notified that the above named *Estate of William C. Barker, hereby appeals* * * * ." (Italics ours.)

We may at least say of the Barker case that it was tried in the circuit court which would have had jurisdiction if the case had been properly instituted, that the right to a jury trial was recognized and waived, that the ward purported to be a party, and that both sides of the controversy apparently desired an adjudication on the merits regardless of the jurisdictional question. The case is of no value as a precedent, and we adhere to the view that the probate court has no jurisdiction to adjudicate a contested claim against a ward, and especially this is true under the facts of the case at bar.

Sturgis v. Sturgis, 51 Or. 10, 93 P. 696, 15 L. R. A. (N. S.) 1034, 131 Am. St. Rep. 724, relied upon by both parties, was a divorce suit against an incompetent under guardianship. The guardian was improperly joined as a party defendant, and the decree purported to bind him for the payment of alimony. It was held in this court that the judgment against the guardian was void since no cause of action had been stated against him. "An action cannot be main-

tained against a guardian upon the liability of the ward, but only against the ward * * * ." The validity of the decree for support was upheld as against the ward. The court held that the enforcement of the decree against the property of the ward must be worked out in the probate court. It may be that a money judgment of the circuit court against a ward cannot be enforced by execution issuing out of that court against the property of the ward if the circuit and probate courts are separate tribunals, but that does not militate against the power of the circuit court to render a judgment, nor does such a rule carry any implication that the indebtedness may be adjudicated in the probate court merely because the statutory probate procedure must be employed in applying, and perhaps pro rating, the property of the ward to the satisfaction of his various obligations. The case gives no support to the contentions of the petitioner.

A careful examination of the opinion in *Kirk v. Mullen*, 100 Or. 563, 197 P. 300, cited by petitioner, will disclose a similar basis for that decision. In that case land belonging to the ward was sold on execution issuing out of the circuit court to enforce the judgment based on a promissory note signed by the guardian. It was held that the guardian could not bind the ward and it was again intimated that a judgment against the ward, if valid (which was not conceded), could be satisfied out of the real property of the ward only through the procedure specified in the probate court. There was no intimation that the indebtedness of the ward must or could be adjudicated in the probate court.

We are of the opinion that the probate court was without jurisdiction to try contested claims against

minors under guardianship; and the same reasons that move us to that conclusion also demonstrate that the procedure employed did not in this type of case confer the necessary jurisdiction over the person of the ward. *Wells v. Ellison,* 133 Or. 155, 289 P. 511, *California Life Ins. Co. v. Marsters,* 145 Or. 640, 28 P. (2d) 233, 28 P. (2d) 878. The judgment of the circuit court is therefore affirmed.

Since the petitioner in determining the procedure to be followed may have been lulled into security by the Barker case, we are of the opinion that neither party should recover costs on this appeal.